# United States Court of Appeals
## For the First Circuit

No. 11-1025

LOUIS R. COSTA,

Petitioner, Appellant,

v.

TIMOTHY HALL, Superintendent, Massachusetts Correctional
Institute; THOMAS REILLY,

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Lynch, Chief Judge,
Souter,[*] Associate Justice,
and Stahl, Circuit Judge.

David J. Apfel, with whom Elianna J. Nuzum, Kristen A.
Kearney, and Goodwin Procter LLP, were on brief, for petitioner.
Argie K. Shapiro, Assistant Attorney General, Criminal
Bureau, with whom Martha Coakley, Attorney General of
Massachusetts, was on brief, for respondents.

March 8, 2012

---

[*]    The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**LYNCH**, **Chief Judge**.  Louis Costa is serving a life sentence without possibility of parole for the first-degree murders of two men in 1986 in Boston's North End.  One of the victims was shot sixteen times, the other seven, at close range.  Three defendants were charged and the ballistics evidence indicated that three guns were used.

Costa was sixteen years old at the time, but after a hearing in juvenile court, he was transferred to Massachusetts Superior Court for adult criminal proceedings, based on separate findings that there was probable cause to believe he had committed the murders and that he was not amenable to rehabilitation in the juvenile justice system.  Had he remained in juvenile court, he would have undergone rehabilitation within the juvenile system; once transferred to Superior Court, he faced life imprisonment if convicted.

Costa's first conviction was vacated in 1992 by the Massachusetts Supreme Judicial Court ("SJC").  He was tried a second time in 1994, convicted again, and sentenced to life imprisonment.  Because he was convicted on an indictment of first-degree murder, he invoked the special procedure under Massachusetts General Laws ch. 278, § 33E, giving the SJC plenary review on appeal as to his convictions after each trial.  After Costa's second trial, the SJC affirmed the juvenile court's transfer decision, his conviction, and his life sentence.

-2-

In 1999, Costa filed a motion for a new trial in Superior Court, asserting for the first time that his trial counsel at the second trial was ineffective in failing to attack the non-amenability finding, as was his appellate counsel in failing to raise the same issue on his second appeal. The Superior Court judge rejected the motion.

Costa then sought discretionary review in the SJC pursuant to § 33E, filing a petition with a Single Justice gatekeeper. On September 14, 2000, a Single Justice rejected Costa's § 33E petition for leave to appeal the denial of his motion. The Single Justice held, as a matter of state law, that the petition failed to present a "new and substantial question."

On October 30, 2000, Costa filed a petition for a writ of habeas corpus in federal district court making essentially the same two ineffective assistance of counsel claims along with other claims not before us. For reasons not entirely obvious from the record, it took ten years for the district court to hear and deny Costa's petition, which it did on December 2, 2010. Costa took a timely appeal.

We affirm the denial of federal habeas relief. Under our decisions in Mendes v. Brady, 656 F.3d 126 (1st Cir. 2011), cert. denied, No. 11-7674, 2012 WL 538490 (U.S. Feb. 21, 2012), and Yeboah-Sefah v. Ficco, 556 F.3d 53 (1st Cir. 2009), the Single Justice's denial of further review is an independent and adequate

state ground. This bar to our review may only be lifted if Costa shows cause and prejudice. He has not, and so federal habeas review is barred.

I.

Louis Costa was one of three defendants charged with first-degree murder in connection with the February 19, 1986 shooting deaths of Joseph Bottari and Frank Angelo Chiuchiolo in Boston's North End. Commonwealth v. Tanso, 583 N.E.2d 1247, 1249 (Mass. 1992). Because Costa was sixteen years old at the time of the murders, the initial proceedings took place in juvenile court. Pursuant to the statutory scheme then in effect, if the juvenile court found probable cause to believe that Costa had committed the murders, the court was required to make a separate "amenability" determination as to Costa's potential for rehabilitation within the juvenile justice system. Mass. Gen. Laws ch. 119, § 61 (1985) (repealed 1996). Finding both probable cause and non-amenability, the juvenile court transferred Costa to Superior Court to stand trial as an adult. Costa opposed the transfer on both grounds.

At the probable cause portion of Costa's transfer hearing, several witnesses testified, including two eyewitnesses to the murders: Boston attorney Joseph Schindler, who observed the murders from his apartment window in North Boston, and Richard Storella, who was himself a participant in the murders. Storella, who received immunity for his testimony, flatly placed Costa in

-4-

both the planning and execution of the murders. Storella's account of the murders at the hearing diverged somewhat from what he had originally disclosed to investigative officers after the murders took place, and Costa's attorney at the transfer hearing closely cross-examined Storella on these inconsistencies. Based on the testimony from the two eyewitnesses, Schindler and Storella, as well as on ballistics evidence indicating that each victim had been shot with three different weapons, the court found probable cause to charge Costa with the two murders.

Having found probable cause, the court conducted an extensive amenability hearing, at which it expressly considered the required statutory factors: "(a) the seriousness of the alleged offense; (b) the child's family, school and social history, including his court and juvenile delinquency record, if any; (c) adequate protection of the public; (d) the nature of any past treatment efforts for the child; and (e) the likelihood of rehabilitation of the child." Mass. Gen. Laws ch. 119, § 61 (1985) (repealed 1996).

Two psychiatric experts for the Commonwealth, as well as Costa's own psychiatric expert, testified at the hearing. Based on their review of a variety of materials, including interviews with Costa's family and psychological examinations of Costa, the experts testified as to Costa's family life, school background, substance abuse, and psychiatric profile. After considering this testimony

and the evidence introduced at the hearing, the court found that Costa had "admit[ted] to a history of aggressive behavior" and alcohol abuse, that he experienced no remorse, had nothing but "disregard for authority," and suffered from a "conduct disorder . . . characterized by a repetitive and persistent pattern of aggressive conduct against the rights of others." Because of these qualities, the court found that Costa was "not a promising candidate for psychological interventions."

The court also found that Costa's family life was "unstable, volatile, and conflict ridden." Costa's father had been sentenced to jail soon after Costa's birth. Although his father had been paroled thirteen years later, at the time of the hearing his whereabouts were unknown, and several arrest warrants had issued for his alleged violations of parole. Costa's mother had her own psychological disorders, for which she had been hospitalized on occasion. She exercised "little, if any control over" Costa. The court emphasized that neither Costa nor his mother would admit to any problems with Costa's behavior, a problem of significance, since family therapy constituted a primary "mode of intervention" for juvenile delinquents under the statute, but, as the court noted, "requires a recognition by all relevant parties that a problem exists and that there is a need for change."

The court also noted that "[l]ong-term residential treatment in the juvenile justice system" would not ordinarily

"extend beyond the defendant's 18th birthday." At the time of the hearing, Costa was 16.6 years old, and the court underscored the probable outcome that if it retained jurisdiction over Costa, he would receive between eight to eighteen months of treatment. Such a short period of treatment, the court found, would "hardly satisfy the defendant's dire need for long-term secure and rehabilitative treatment."

In April of 1986, the court issued a written order finding Costa not amenable to rehabilitation within the juvenile system, dismissing Costa's delinquency charges, and transferring his case to Superior Court. Seven months later, the Superior Court granted Costa's motion to remand the case to the juvenile court for a clarification of the court's transfer findings, "in particular, the finding of likelihood of rehabilitation." At this point, Costa submitted additional psychiatric and behavioral evidence in the form of reports issued by the Department of Youth Services, which had exercised supervision over him during the pre-trial period.

In a revised ruling examining at length Costa's psychological profile, family and behavioral history, substance abuse, and potential for rehabilitation, the court reaffirmed its non-amenability findings, concluding that: "by [his] actions [the shootings], his admitted history of aggressive behavior, his lack of anxiety, fear or remorse, and his disrespect for authority, in general, [Costa] has demonstrated that he is an exceptionally

dangerous individual who poses a substantial threat to the safety of the public." Commonwealth v. DiBenedetto (DiBenedetto I), 605 N.E.2d 811, 819 (Mass. 1992) (second alteration in original).

A jury convicted Costa of two counts of first-degree murder in Superior Court on April 11, 1988. In a motion for a new trial filed by Costa and denied by the Superior Court, he argued that newly uncovered evidence impugning Storella's credibility required that his convictions be vacated and the case be sent back for a new probable cause determination by the juvenile court.

Subsequently, Costa appealed his conviction and the denial of his motion for a new trial to the SJC. Under its plenary powers to review all issues -- whether raised or overlooked by the defendant -- on direct appeal of a capital case, see Mass. Gen. Laws ch. 278, § 33E, the SJC thoroughly considered both aspects of the juvenile court's transfer decision: the probable cause and non-amenability findings, DiBenedetto I, 605 N.E.2d at 818-19. The SJC affirmed the Superior Court's order denying Costa's motion for a new probable cause hearing, crediting the Superior Court's finding that Costa's newly uncovered evidence "would have had little or no value as material which would bear upon the credibility of Storella." Id. at 818. In addition, the SJC examined the juvenile court's non-amenability finding and found it to be without error. Id. at 819.

Although it rejected his transfer hearing argument, as well as various of his other arguments, the SJC reversed Costa's conviction and ordered a new trial based on errors in the admission of certain evidence at trial.[1]  Id. at 813-14.

As a result, Costa's second trial was also in Superior Court.  Although he had been an unavailable witness at Costa's first trial, Storella testified at the second trial, giving another account of the murders, inconsistent with his earlier account at Costa's transfer hearing.  Storella's reliability became a key issue at the second trial, prompting all three defendants to strenuously challenge the veracity of his testimony. Commonwealth v. DiBenedetto (DiBenedetto II), 693 N.E.2d 1007, 1009 (Mass. 1998).

The jury again convicted Costa on two counts of murder in the first degree.  On appeal, Costa again challenged Storella's role in the juvenile court's decision to transfer his case, arguing that he was entitled to a new probable cause hearing, this time based on Storella's inconsistent testimony at the second trial.

---

[1]     Although Richard Storella testified at Costa's transfer hearing, he was unavailable to testify at Costa's first trial in Superior Court.  At that trial, the Superior Court admitted against Costa Storella's recorded testimony from the transfer hearing. Costa argued to the SJC that because the juvenile court had limited his cross-examination of Storella at the transfer hearing, the admission of Storella's recorded testimony at his trial violated the Confrontation Clause.  The SJC agreed and ordered a new trial. Commonwealth v. DiBenedetto (DiBenedetto I), 605 N.E.2d 811, 815-16 (Mass. 1992).

The SJC rejected this claim on the grounds that "[i]n his numerous versions of the crime, Storella never wavered from his position that Costa was one of the shooters." Id. at 1014. It affirmed the transfer and conviction.

Costa later filed a motion for a new trial in Superior Court, in which he expressly raised for the first time the claims that each of his trial and appellate counsel were ineffective in failing to present claims for reconsideration of the juvenile court's non-amenability finding in light of Storella's inconsistent testimony. The Superior Court denied the motion on the grounds that on Costa's first appeal, "the issue of Storella's credibility at the transfer hearing was argued, the judge's rulings were considered thoroughly and the decision to transfer was found to be without error;" the same issue was again "presented and rejected" on Costa's second appeal; and, beyond this, Costa had already received plenary review under § 33E on both appeals. The court also specifically noted that Costa had waived any claim as to ineffective assistance of trial counsel by failing to raise it on direct appeal. Thus finding Costa's claims procedurally defaulted under state law, the Superior Court reviewed the case for error amounting to "a substantial risk of a miscarriage of justice," the default standard of review in Massachusetts for unpreserved claims, Commonwealth v. Randolph, 780 N.E.2d 58, 64-65 (Mass. 2002)

-10-

(quoting Commonwealth v. Freeman, 227 N.E.2d 3, 9 (Mass. 1967)) (internal quotation marks omitted), and denied relief.

Pursuant to Massachusetts General Laws ch. 278, § 33E, Costa petitioned a Single Justice of the SJC for review of his motion for a new trial. The Single Justice denied his petition in a written decision finding that he "failed to present a new and substantial question" as required for further discretionary review by the SJC. The Single Justice noted in his opinion that "Storella's credibility at the transfer hearing had been argued in both previous appeals, each time without success," and that "Storella's testimony played but a minor role" in the juvenile court's non-amenability determination.

Subsequently, Costa filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in federal district court. The district court denied Costa's petition, but issued a limited Certificate of Appealability as to whether Costa's trial and appellate counsel were ineffective in failing to challenge the juvenile court's non-amenability findings.[2]

---

[2]  The district court also issued the Certificate of Appealability as to Costa's claims that his trial and appellate counsel were ineffective in failing to argue that the Commonwealth violated its constitutional duty under Brady v. Maryland, 373 U.S. 83 (1963), to disclose exculpatory evidence related to Storella's immunity agreement. Costa has not pursued these Brady claims on appeal.

-11-

II.

We review the district court's denial of habeas relief de novo. Lynch v. Ficco, 438 F.3d 35, 44 (1st Cir. 2006) (citing Ellsworth v. Warden, 333 F.3d 1, 3 (1st Cir. 2003)).

Ordinarily, a federal habeas court may not review a state prisoner's claims where a state court has "declined to address [those] claims because the prisoner . . . failed to meet a state procedural requirement," and where this decision "rests on independent and adequate state procedural grounds." Maples v. Thomas, 132 S. Ct. 912, 922 (2012) (alteration in original) (quoting Walker v. Martin, 131 S. Ct. 1120, 1127 (2011)) (internal quotation marks omitted). This independent and adequate state grounds doctrine "is grounded in concerns of comity and federalism." Coleman v. Thompson, 501 U.S. 722, 730 (1991). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (alteration in original) (quoting Coleman, 501 U.S. at 732) (internal quotation marks omitted). Thus, a petitioner must demonstrate cause for any state-court procedural default of federal claims, and prejudice therefrom, before the federal courts may consider the merits of those claims. Id.

-12-

The "particular waiver rule" expressed in Massachusetts's § 33E procedure for gatekeeper review merits "separate, categorical treatment" as an independent and adequate state ground. <u>Mendes</u>, 656 F.3d at 129. A Single Justice's finding that a petitioner has not raised a "new-and-substantial" question for further review constitutes a finding of procedural default under state law. <u>Id.</u> at 131; <u>cf.</u> <u>Walker</u>, 131 S. Ct. at 1127.

Under Massachusetts law, a claim is not "new" within the meaning of § 33E where it "has already been addressed, or where it could have been addressed had the defendant properly raised it at trial or on direct review." <u>Commonwealth</u> v. <u>Gunter</u>, 945 N.E.2d 386, 393 (Mass. 2011), <u>cert.</u> <u>denied</u>, 132 S. Ct. 218 (2011). Section 33E "requires that the defendant present all his claims of error at the earliest possible time, and failure to do so precludes relief on all grounds generally known and available at the time of trial or appeal." <u>Id.</u> (quoting <u>Commonwealth</u> v. <u>Pisa</u>, 425 N.E.2d 290, 293 (Mass. 1981)). A defendant, moreover, may not avoid § 33E's "new and substantial" rule by simply attributing such claims to ineffective assistance of counsel, <u>id.</u> at 393-94; even where a Single Justice allows SJC review, the claims will be reviewed under the "substantial risk of a miscarriage of justice" standard ordinarily applicable to unpreserved claims,[3] <u>Commonwealth</u>

---

[3]    Section 33E provides for a more generous standard of review for ineffective assistance of counsel claims brought alongside a defendant's direct appeal. <u>See</u> <u>Mendes</u> v. <u>Brady</u>, 656

-13-

v. Lao, 877 N.E.2d 557, 563 (Mass. 2007); Randolph, 780 N.E.2d at 65; see also Gunter v. Maloney, 291 F.3d 74, 78-79 (1st Cir. 2002).

Recognizing that underlying Costa's ineffective assistance of counsel claims was an argument about Storella's credibility, an issue well-covered at both of Costa's trials and respective appeals, the Single Justice found that his claims did not raise a "new" issue within the meaning of § 33E. "On the question of the defendant's amenability to rehabilitation," the Single Justice found that "Storella's testimony played but a minor role, forming just one sentence in [eight pages] of findings made by the transfer judge." The Justice found that the juvenile court gave thorough "consideration to the appropriate factors in deciding to transfer the defendant," and that any "differences in Storella's testimony do not require a new transfer hearing." The Justice noted that in both of Costa's prior appeals, the SJC "determined

---

F.3d 126, 130 (1st Cir. 2011), cert. denied, No. 11-7674, 2012 WL 538490 (U.S. Feb. 21, 2012). At this stage, the defendant has the opportunity to file a motion for a new trial in the SJC and supplement the record there as needed: any ineffective assistance of counsel claims benefit from the more favorable "substantial likelihood of a miscarriage of justice" standard of review. Commonwealth v. Novo, 865 N.E.2d 777, 787 (Mass. 2007). However, after rescript has issued in the direct appeal, unpreserved claims attributed to ineffective assistance of counsel will be reviewed for error "giv[ing] rise to a substantial risk of a miscarriage of justice," the standard ordinarily applicable to unpreserved claims. Commonwealth v. Randolph, 780 N.E.2d 58, 65 (Mass. 2002); see also Commonwealth v. Smith, 951 N.E.2d 322, 320-24 (Mass. 2011) (explaining the difference between the two standards of review).

-14-

there was no error in the decision to transfer the defendant to the Superior Court for trial as an adult."

The Single Justice's finding that neither of Costa's ineffective assistance of counsel claims presented "new and substantial questions" within the meaning of § 33E review constitutes an independent and adequate state ground. The Single Justice observed that both claims merely reiterated the same substantive challenge to Storella's credibility already decided against Costa on the merits. Although Costa argues that his ineffectiveness of appellate counsel claim necessarily presents a "new" question in that it could not have been raised until after his direct appeal, the Single Justice also found that this claim was not substantial, rendering Costa's "newness" argument, were it even plausible,[4] irrelevant. The Single Justice's finding of a lack of substantiality constitutes an independent and adequate state ground in and of itself and acts to bar federal review. Mendes, 656 F.3d at 128.

The fact that the Single Justice also explained his views as to why the claims were not new and not substantial does not convert his decision into one on the merits. We made this clear in

---

[4] Given that in its earlier decisions, the SJC twice reviewed and decided the transfer claim against Costa, the claim was not "new" within the meaning of § 33E. See Commonwealth v. DiBenedetto (DiBenedetto II), 693 N.E.2d 1007, 1014 (Mass. 1998); DiBenedetto I, 605 N.E.2d at 818-19. The ineffective assistance of appellate counsel claim merely reiterated the same substantive claim asserted against trial counsel.

-15-

<u>Mendes</u>: any supplemental discussion of the petitioner's claims is "not [a] ruling on the merits," since the Single Justice has "no authority under state law" to reach the merits in his or her exercise of gatekeeper review.[5] <u>Id.</u> at 131. Section 33E's waiver rule is unaltered by the Single Justice's discussion of Costa's claims in the decision denying him further review.

## III.

As a rule, when a state prisoner has defaulted a federal claim in state court pursuant to an independent and adequate state procedural rule, federal habeas relief is barred unless the prisoner demonstrates either cause for and prejudice from the default, <u>Maples</u>, 132 S. Ct. at 922; <u>Bucci</u> v. <u>United States</u>, 662 F.3d 18, 27 (1st Cir. 2011), or actual innocence, <u>Schlup</u> v. <u>Delo</u>, 513 U.S. 298, 321 (1995). "The procedural default doctrine and its attendant cause and prejudice standard . . . apply alike whether

---

[5] This accords with our prior case law. In <u>Jewett</u> v. <u>Brady</u>, 634 F.3d 67 (1st Cir. 2011), we held that where, unlike here, the Single Justice finds that a claim is "new" within the meaning of § 33E, a federal habeas court must accept this as a binding merits determination of newness and may not look behind the reasoning. <u>Id.</u> at 76 ("[A] determination that the issues are 'new' and simply not 'substantial' resolves the claims on the merits and does not signal procedural default."). However, where, as here, the Single Justice finds a claim is neither new nor substantial under § 33E, this is a procedural bar to federal habeas review. <u>Id.</u>

And in <u>Phoenix</u> v. <u>Matesanz</u>, 189 F.3d 20 (1st Cir. 1999), we noted that in a case where the Single Justice finds a procedural default but briefly examines the merits to determine if the "substantial risk of a miscarriage of justice" standard is met, such review does not undercut the independence and adequacy of the state grounds. <u>Id.</u> at 25 n.2.

the default in question occurred at trial, on appeal, or on state collateral attack." Carpenter, 529 U.S. at 451 (internal citations and quotation marks omitted); see also Murray v. Carrier, 477 U.S. 478, 490-91 (1986). Costa can show neither cause nor prejudice here, nor has he attempted to show actual innocence.

Because Costa has procedurally defaulted his ineffective assistance of counsel claims in state court, he cannot simply rely on what is at the heart of the merits of those claims, the alleged ineffectiveness, to show cause for procedural default of the same claims. Carpenter, 529 U.S. at 453. He must independently satisfy the cause and prejudice standard with respect to both ineffective assistance claims. Federal habeas courts do not exempt ineffective assistance of counsel claims from the general rule requiring cause and prejudice for procedural default, because to do so would render the exhaustion requirement "illusory." Id. at 452. This is true where, as here, the petitioner attempts to excuse procedural default of his ineffective assistance of counsel claim by pointing merely to another layer of ineffectiveness.

Costa has shown neither cause for nor prejudice from this second level of procedural default. Cause for procedural default "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Carrier, 477 U.S. at 488; see also Reed v. Ross, 468 U.S. 1, 16 (1984). This could

-17-

include a showing that "the factual or legal basis for a claim was not reasonably available to counsel," Carrier, 477 U.S. at 488, or that there was "some interference by officials," id. (quoting Brown v. Allen, 344 U.S. 443, 486 (1953)) (internal quotation marks omitted). Costa argues that his attorneys simply did not recognize that an amenability argument could be made on the basis of Storella's inconsistent testimony. However, that counsel simply "failed to recognize the factual or legal basis for a claim" does not in and of itself "constitute cause for a procedural default." Gunter, 291 F.3d at 82 n.2 (quoting Carrier, 477 U.S. at 486) (internal quotation mark omitted).

The factual basis for the amenability claim was known or knowable by the time of Costa's second trial and appeal. At that point, Storella had given multiple inconsistent accounts of the two murders. As a result, claims based on these inconsistencies were reasonably available at trial and on direct appeal: indeed, Storella's inconsistent testimony was the basis of Costa's probable cause attack. Finally, Costa has not and cannot make the argument that state officials or some other external factor interfered or made compliance with the state rule "impracticable." Coleman, 501 U.S. at 753 (quoting Carrier, 477 U.S. at 488).

In addition to failing to show cause, Costa is unable to show prejudice, the second showing he must meet to avoid the independent and adequate state grounds doctrine. Id. at 750. To

show prejudice, Costa must demonstrate "not merely that the errors . . . created a <u>possibility</u> of prejudice, but that they worked to his <u>actual</u> and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>Carrier</u>, 477 U.S. at 494 (quoting <u>United States</u> v. <u>Frady</u>, 456 U.S. 152, 170 (1982)). Costa is unable to make this showing.

As the SJC found in <u>DiBenedetto II</u>, and as the Single Justice noted in his decision, although Storella changed the particulars of his testimony as to Costa's role in the murders, he "never wavered" from the critical point that Costa was one of the killers. 693 N.E.2d at 1014. Costa argues nonetheless that Storella's embellished depiction of Costa's conduct during the two murders was critical to the juvenile court's non-amenability finding. However, the Single Justice noted in his decision, "Storella's testimony played but a minor role" in the juvenile court's non-amenability finding, constituting "just one sentence" in eight pages of findings. There was no prejudice. That ends the matter.

We are barred from reviewing the state court's decision because it rests on an independent and adequate state ground. The denial of the petition is affirmed.