# United States Court of Appeals
## For the First Circuit

No. 14-1070

ROBERT M. LEE,

Petitioner, Appellant,

v.

MICHAEL CORSINI,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Howard, Selya and Stahl,
Circuit Judges.

Mary T. Rogers, for appellant.
Anne M. Thomas, Assistant Attorney General, with whom Martha
Coakley, Attorney General, was on brief, for appellee.

January 26, 2015

**STAHL, <u>Circuit Judge</u>**.  A jury convicted Petitioner-Appellant Robert M. Lee of murder in the first degree for the 1976 death of Angel Santos Davila.  The Massachusetts Supreme Judicial Court ("SJC") affirmed Lee's conviction on direct appeal.  <u>See</u> <u>Commonwealth</u> v. <u>Lee</u>, 383 Mass. 507 (1981).  After several unsuccessful motions for a new trial in state court, Lee filed a petition for habeas corpus relief in federal district court, arguing that his attorneys at both trial and postconviction proceedings were constitutionally ineffective and that prosecutorial misconduct tainted his case.  The district court denied habeas relief as well as Lee's motion for discovery, holding that all of Lee's claims had been procedurally defaulted.  After careful consideration, we hold that the claim of ineffective assistance of postconviction counsel has not been procedurally defaulted, but that 28 U.S.C. § 2254(i) constitutes an independent bar to habeas relief on this ground.  We accordingly affirm.

## I.  Facts & Background

### A.      <u>Underlying crime</u>

We set forth the facts as recounted by the SJC in affirming Lee's conviction on direct appeal, supplemented by other consistent facts in the record.  <u>Yeboah-Sefah</u> v. <u>Ficco</u>, 556 F.3d 53, 62 (1st Cir. 2009).

Janet Brady hired Lee to kill her boyfriend Angel Santos Davila, with whom she lived.[1]  Brady testified at trial that her relationship with Davila began deteriorating in the spring of 1976, and that, by the summer, she had resolved to "find someone to pay to do him harm."  She contacted Robert DeCot, the manager of a local bar, who put her in touch with Lee.  Lee was known to DeCot as a patron of his bar; Brady, too, was already acquainted with Lee, as he was a customer at the Fort Devens credit union where she worked as a loan officer.  Over the days leading up to Davila's shooting, Brady and Lee met several times at local bars and in the back office of the credit union.  During these meetings, they made plans to "take care of" Davila and discussed payment.  Lee demanded $500 upfront, plus an additional $2000; Brady complied.

Davila was shot at approximately 8:45 p.m. on Thursday, August 26, 1976.  People attending a pool party at the house next door to Brady and Davila's heard shots ring out, as well as the sound of a car with a noisy muffler driving away.  An "old car, making a lot of noise" and "reddish" in color was seen driving away very fast.  Lee's wife, who was out of town at the time of the shooting, owned a red Toyota, which Lee had been seen driving that week.

---

[1] Brady was charged with conspiracy and accessory before the fact to murder.  Before Lee's trial, she pleaded guilty to conspiracy, and the accessory charge was dismissed.  She served seven years in prison, and died in 2001.

Police recovered one yellow Sears shotgun shell, determined to have come from a 20-gauge shotgun, outside Davila's house, as well as No. 8 shot lead fragments from the stairway inside the house; similar lead fragments also were extracted from Davila's body during the autopsy. There was testimony at trial that although Lee had loaned his shotgun to a friend, he picked it up sometime between August 23 and 26. When police arrested Lee on August 29, they found in his closet a 20-gauge Remington shotgun and five yellow Sears 20-gauge shotgun shells filled with No. 8 shot.

> Lee presented an alibi defense:
>
> Lee offered his own and corroborating testimony that he was at a bar some distance away from the victim's home from eight o'clock until well after nine on the evening in question. He sought to show that he was not driving his wife's red Toyota but a jeep that night, that the Toyota was not old or noisy, and that he did not recover his shotgun until Friday, August 27, the day after the shooting. Lee's version of his contact with Janet Brady was that she asked him to collect money from a Mr. "Warner." He claimed Brady concocted the story of the conspiracy with Lee in order to protect her son or someone else who actually shot Davilla [sic].

Lee, 383 Mass. at 509. After a six-day trial in May 1977, the jury rejected this defense and found Lee guilty of murder in the first degree.

B.        Direct appeal

On appeal, Lee challenged the denial of his motion to suppress and motion for a directed verdict, as well as the jury instructions on malice and the trial judge's failure to instruct on manslaughter.  The SJC affirmed Lee's conviction in 1981, finding no merit to any of his arguments.

C.        Postconviction proceedings

Postconviction proceedings have extended over four decades since Lee's conviction was affirmed on direct appeal.  Lee filed his first motion for a new trial, through counsel, in July 1983.  After that attorney was disbarred, another lawyer took over his case and filed a substitute motion for a new trial in August 1989.  That motion raised claims of ineffective assistance of counsel, based on a failure to investigate Lee's purported lack of criminal responsibility as a result of mental impairment sustained in the Vietnam War; ineffectiveness of counsel in cross-examining witnesses and failing to request a jury instruction on misidentification; and error in the jury instructions on reasonable doubt and malice.  The motion was denied without a hearing in February 1990.

Lee subsequently filed a pro se motion to reconsider that decision, which also added several claims centering on his lack of criminal responsibility and incompetence to stand trial, and ineffective assistance of counsel for failure to raise those

-5-

claims. This motion, too, was denied without a hearing. Lee sought leave to appeal, and a hearing was held before a single justice of the SJC in November 1992. The single justice, acting as gatekeeper, declined to let the appeal proceed to the full court.[2]

Lee filed another pro se motion for a new trial in September 1995, also requesting that counsel be assigned to him. Although his motion for the appointment of counsel was allowed, none was assigned and, for reasons that are unclear from the record, no further action was taken on Lee's case for over seven years. Mary Rogers, Lee's current attorney, was appointed as new counsel in February 2003; in September 2004, she filed a new motion for a new trial to substitute for Lee's pro se filing.

The 2004 motion for a new trial took a new tack. Instead of focusing on Lee's alleged lack of criminal responsibility and claimed error in jury instructions, this motion asserted numerous instances of ineffective assistance of counsel — at both trial and postconviction stages — as well as prosecutorial misconduct as

---

[2] As will be discussed below, in first-degree murder cases, Massachusetts allows for the filing of successive motions for a new trial following the affirmance of the defendant's conviction on direct appeal. Mass. Gen. Laws ch. 278, § 33E. However, an appeal from a denial of a motion for a new trial may only proceed to the full Supreme Judicial Court if a single justice of the SJC, acting as gatekeeper, determines that the appeal "presents a new and substantial question." Id.; Napolitano v. Att'y Gen., 432 Mass. 240, 241 & n.2 (2000).

grounds for a new trial.[3]  In connection with this motion, Lee also

_____

[3] As the district court summarized, the 2004 motion for a new trial put forward many grounds of ineffective assistance of trial counsel, including that:

(1) he failed to call two main suspects — Brady's eldest son and that son's friend — as witnesses and instead allowed admission of their written statements to police to substitute for live testimony;
(2) he failed to argue that Brady's ex-husband may have been the murderer, despite statements to the police by the victim and Brady that suggested the ex-husband might have shot the victim;
(3) he failed to cross-examine Brady about her change of plea on the eve of trial and her prior inconsistent statements to the police;
(4) he had an undisclosed conflict of interest, having represented Brady in a divorce proceeding several years prior to the trial;
(5) he inadequately prepared, investigated, and presented evidence, including a complete failure to have any witnesses ready at the beginning of trial and his misstating of facts during his closing argument;
(6) he was an alcoholic who drank during trial and was ultimately censured by the bar and is no longer practicing law;
(7) he failed to hire a firearms expert at the outset of trial, and the one he hired mid-trial was incompetent;
(8) he required assistance from the trial judge in framing foundation questions regarding Lee's character for truthfulness; and
(9) he allowed Lee to be seated in the dock during trial.
        In addition, Lee advanced claims of prosecutorial misconduct, alleging that: (1) the police failed to investigate Lee's alibi, Brady's alibi, or those of Brady's eldest son and his friends; (2) the police threatened a witness; (3) the prosecutor failed to disclose exculpatory evidence; and (4) the Commonwealth's firearms expert failed to preserve, document, and measure evidence.  Finally, Lee claimed that his post-conviction attorneys were ineffective for failing to raise these claims.

Lee v. Corsini, No. 07-11316-MLW, 2013 WL 6865585, at *4-5 (D. Mass. Dec. 24, 2013) (citations omitted).

filed motions for discovery, in attempt to obtain documents such as police reports, ballistics records, grand jury minutes, and the victim's statements to police, which state prosecutors and law enforcement officers purportedly had not provided. The court denied the motion for new trial in September 2005 without explicitly addressing the motions for discovery. Lee sought leave to appeal the denial of the motion before a single justice of the SJC. Finding that the appeal did not raise "a new and substantial question," Mass. Gen. Laws ch. 278, § 33E, the single justice, in July 2006, declined to let the appeal proceed to the full court.

Lee, through current counsel, filed a petition for a writ of habeas corpus in the district court in July 2007, raising much the same claims as the 2004 motion presented. Lee also filed several ancillary motions, including a motion for discovery, motion for an evidentiary hearing, and motion for criminal records of witnesses. The district court held a non-evidentiary hearing in March 2009, and subsequently denied Lee's motions. For reasons that are unclear from the record, the district court's final memorandum and order denying habeas relief did not issue until December 2013, nearly six-and-a-half years after Lee filed the petition.

Applying our decision in Costa v. Hall, 673 F.3d 16, 22-25 (1st Cir. 2012), the district court held that all of Lee's claims had been procedurally defaulted, since, as the single

justice of the SJC had determined, they failed to overcome the "new and substantial question" hurdle of Mass. Gen. Laws ch. 278, § 33E. See Lee v. Corsini, No. 07-11316-MLW, 2013 WL 6865585, at *11 (D. Mass. Dec. 24, 2013). As "denial of review under § 33E [due to procedural waiver] is an independent and adequate state ground that bars federal habeas review," Simpson v. Matesanz, 175 F.3d 200, 206 (1st Cir. 1999), the district court declined to reach the merits of Lee's claims, finding neither cause for nor prejudice from the procedural default, nor any fundamental miscarriage of justice to excuse the default.

Thus, after a long and tortuous process involving sometimes inordinate delay, this appeal has finally reached us, over thirty-eight years after the shooting of August 26, 1976.

## II. Analysis

We review a district court's denial of a habeas corpus petition de novo. Lynch v. Ficco, 438 F.3d 35, 44 (1st Cir. 2006).

Because, as a general matter, "[a] federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment," Walker v. Martin, 131 S. Ct. 1120, 1127 (2011) (second alteration in original) (internal quotation marks omitted), we look to the "last reasoned opinion" of the state court to discern the

grounds for its decision.  <u>Ylst</u> v. <u>Nunnemaker</u>, 501 U.S. 797, 803 (1991).

The last reasoned opinion here is the 2006 decision of the single justice of the SJC, who ruled that Lee's appeal from the denial of his 2004 motion for a new trial did not present "a new and substantial question which ought to be determined by the full court." Mass. Gen. Laws ch. 278, § 33E.  Before the single justice were three types of claims: ineffective assistance of trial counsel, prosecutorial misconduct, and ineffective assistance of postconviction counsel (namely, the attorney who handled his first motion for a new trial in 1989).  The single justice held that the first two claims were not new, since they could have been raised in an earlier proceeding; he held that the claim of ineffective assistance of postconviction counsel, though "arguably" new, was nevertheless not substantial.[4]  The parties agree that the first two claims have been procedurally defaulted, but disagree over whether the ineffective-assistance-of-postconviction-counsel claim has been defaulted, and whether there is reason to excuse any default.  We discuss these issues in more detail below.

_____

[4] The single justice referred to this claim as "ineffective assistance of appellate counsel who represented [Lee] on his first motion for new trial."  For the sake of clarity, we refer to this claim as one of ineffective assistance of postconviction counsel, to distinguish the attorney in question from the one who handled Lee's direct appeal.

A.        Whether claim of ineffective assistance of postconviction counsel has been procedurally defaulted under Mass. Gen. Laws ch. 278, § 33E

Federal habeas review of the merits of a claim is precluded if there is an independent and adequate state law ground supporting the state court's decision. Walker, 131 S. Ct. at 1127. This principle "is grounded in concerns of comity and federalism." Costa, 673 F.3d at 23 (quoting Coleman v. Thompson, 501 U.S. 722, 730 (1991)). A state procedural rule is adequate to preclude federal merits review "so long as the state regularly follows the rule and has not waived it by relying on some other ground." Jewett v. Brady, 634 F.3d 67, 76 (1st Cir. 2011) (citing Horton v. Allen, 370 F.3d 75, 80–81 (1st Cir. 2004)). If the state court's decision indeed rests on some other, nonprocedural ground, federal merits review will be available only if that ground is federal in nature, or "interwoven" with federal law. Brewer v. Marshall, 119 F.3d 993, 999 (1st Cir. 1997) (quoting Coleman, 501 U.S. at 733).

We have previously addressed the "particular waiver rule" of Mass. Gen. Laws ch. 278, § 33E, the statute specific to appeals of first-degree murder convictions, upon which the single justice relied in his decision. Mendes v. Brady, 656 F.3d 126, 129 (1st Cir. 2011). According to the scheme set forth in that statute, a defendant who has been convicted of first-degree murder is afforded plenary review on direct appeal to the SJC. § 33E. Following such review, a defendant is free to file any number of motions for a new

-11-

trial in state superior court.  See id.  He is only entitled to appellate review of the denial of such a motion, however, if a single justice of the SJC determines that the appeal presents a question that is both "new" and "substantial," fit for resolution by the full court, id., or if it nevertheless raises the specter of "a substantial risk of a miscarriage of justice," Commonwealth v. Drew, 447 Mass. 635, 638 (2006).

"A defendant's claim might be 'new,' for example, if the applicable law was not sufficiently developed at the time of trial or direct appeal, such that the claim could not reasonably have been raised in those proceedings; or if evidence not previously available comes to light."  Commonwealth v. Gunter, 459 Mass. 480, 488 (2011) (citation omitted).  By contrast,

> [a]n issue is not 'new' within the meaning of [§ 33E] where either it has already been addressed, or where it could have been addressed had the defendant properly raised it at trial or on direct review.  The statute requires that the defendant present all his claims of error at the earliest possible time, and failure to do so precludes relief on all grounds generally known and available at the time of trial or appeal.

Commonwealth v. Ambers, 397 Mass. 705, 707 (1986) (internal quotation marks omitted).  An issue is "substantial" if it is "meritorious . . . in the sense of being worthy of consideration by an appellate court."  Gunter, 459 Mass. at 487.  A decision by the single justice that a § 33E appeal neither presents a new and substantial question nor raises a substantial risk of a miscarriage

-12-

of justice, is "final and unreviewable."  See Commonwealth v. Monteiro, 451 Mass. 1009, 1009 (2008).

The single justice's determination that an issue is not "new" within the meaning of § 33E is tantamount to a finding of procedural default, "the classic example of an independent and adequate state ground."  Simpson, 175 F.3d at 207.  But the single justice's decision need not rest on grounds of default; she may instead find that the issue is in fact new but nevertheless insubstantial, based on an application of the substantive legal standard.  "[A] determination that the issues are 'new' and simply not 'substantial' resolves the claims on the merits and does not signal procedural default."  Jewett, 634 F.3d at 76 (citing Phoenix v. Matesanz, 189 F.3d 20, 25–27 (1st Cir. 1999)); see also Simpson, 175 F.3d at 207 n.4 ("Suppose that the denial by the [single justice] of the § 33E petition rests . . . on a finding that while petitioner's claim is new, it is, nonetheless, not substantial — a conclusion reached by analysis under and resting on federal law. It could be cogently argued that such a denial does not rest purely on state law and so is not independent.  That hypothetical involves clear reliance on federal law and is vastly different from an order denying § 33E review . . . [where] there had been procedural waiver." (citations omitted)).

This, at least on its face, is straightforward enough — a finding that the issue is not new amounts to procedural default,

-13-

whereas a finding that the issue is new but not substantial does not. However, both the district court and the parties have identified some tension in our prior cases addressing single justices' application of the new-and-substantial rule. We take this opportunity to dispel any uncertainty.

The source of the confusion is a passage in our recent decision in Costa, which, when read in isolation, appears to endorse the proposition that a single justice's resolution of the substantiality prong against the petitioner by itself signals procedural default. In that case, the substantive issue underlying the ineffective-assistance-of-appellate-counsel claim raised on appeal to the single justice (specifically, the inconsistent testimony of a particular witness) had already been reviewed and rejected twice by the SJC, and was therefore neither new nor substantial. See Costa, 673 F.3d at 24 n.4. We rejected Costa's entreaty for merits review, reasoning:

> The Single Justice's finding that neither of Costa's ineffective assistance of counsel claims presented "new and substantial questions" within the meaning of § 33E review constitutes an independent and adequate state ground. The Single Justice observed that both claims merely reiterated the same substantive challenge to [a trial witness's] credibility already decided against Costa on the merits. Although Costa argues that his ineffectiveness of appellate counsel claim necessarily presents a "new" question in that it could not have been raised until after his direct appeal, the Single Justice also found that this claim was not substantial, rendering Costa's "newness" argument, were it even

-14-

> plausible, irrelevant. <u>The Single Justice's</u>
> <u>finding of a lack of substantiality</u>
> <u>constitutes an independent and adequate state</u>
> <u>ground in and of itself and acts to bar</u>
> <u>federal review</u>. <u>Mendes</u>, 656 F.3d at 128.

<u>Id.</u> at 24 (emphasis added).

As the district court here noted, the underlined text in particular is difficult to reconcile with our prior holdings, discussed above, that a determination of an issue's insubstantiality preserves federal merits review, provided that the issue is also new. <u>See, e.g.</u>, <u>Jewett</u>, 634 F.3d at 76. Lee argues that those prior holdings remain good law.

We agree. <u>Costa</u> did not impose a new categorical bar to federal review of habeas petitions. Indeed, when read in conjunction with a footnote in the same case, it is clear that the <u>Costa</u> decision as a whole reaffirms the general principle that a single justice's determination that an issue is new but not substantial does <u>not</u> preclude federal habeas review on the merits. As we observed in that footnote:

> This [the principle that a single justice's explanation of her views as to why claims are not new and not substantial does not convert the decision into one on the merits] accords with our prior case law. In <u>Jewett</u> v. <u>Brady</u>, 634 F.3d 67 (1st Cir. 2011), we held that where, unlike here, the Single Justice finds that a claim is "new" within the meaning of § 33E, a federal habeas court must accept this as a binding merits determination of newness and may not look behind the reasoning. <u>Id.</u> at 76 ("[A] determination that the issues are 'new' and simply not 'substantial' resolves the claims on the

-15-

> merits and does not signal procedural default."). However, where, as here, the Single Justice finds a claim is neither new nor substantial under § 33E, this is a procedural bar to federal habeas review. Id.

Costa, 673 F.3d at 24 n.5.

Thus, it is not the case that a single justice's finding of a lack of substantiality will always bar merits review. Rather, as per the facts of Costa, a finding of a lack of substantiality precludes review only when it is accompanied by the conclusion that the issue is also not new. In essence, it is only the failure to satisfy the "new" prong of the § 33E rule that signals procedural default.

Here, the single justice determined that Lee's claims regarding ineffective assistance of trial counsel and prosecutorial misconduct were not new because they could have been raised on direct appeal or in his first motion for a new trial. As the parties agree, such a finding amounts to a procedural default of these claims. See, e.g., Yeboah-Sefah, 556 F.3d at 74–75. But the single justice did not make a comparable finding regarding Lee's claim of ineffective assistance of postconviction counsel. Instead, he observed, "Arguably, this is [Lee's] first opportunity to raise the issue of ineffective assistance of [postconviction] counsel who represented him on his first motion for new trial. However, even assuming that this claim could be new, it is not substantial." This conclusion was supported by a "fairly detailed"

-16-

analysis of the merits of the ineffective-assistance-of-postconviction-counsel claim — several pages in length — under the substantive legal standard of Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  Phoenix, 189 F.3d at 25 n.2.

The absence of any definite finding as to newness distinguishes this case from others such as Mendes, 656 F.3d at 130, and Yeboah-Sefah, 556 F.3d at 75, where we have held that the adequacy and independence of state law grounds are not undercut when the single justice finds procedural default but also briefly reviews the merits of the claim to ensure that there is no substantial risk of a miscarriage of justice.  Those cases make plain that procedurally defaulted claims cannot be resurrected by a single justice's holistic review of the merits in the context of a miscarriage-of-justice analysis.  Here, by contrast, the single justice avoided making any determination as to procedural default in connection with the claim of ineffective assistance of postconviction counsel, instead resting his decision on the substance of that claim, which in his judgment was weak, since Lee had not demonstrated that postconviction counsel's performance was constitutionally deficient.

"Our inquiry does not, of course, end here.  Even holding that the [single] justice's decision rested not on procedural default but on the merits of [the petitioner's] ineffective assistance claim, we may not entertain habeas review if the merits

-17-

determination was grounded in state law." Phoenix, 189 F.3d at 26. Although the single justice did not cite federal constitutional provisions or case law in his decision, Lee pressed arguments regarding the ineffectiveness of postconviction counsel under both the federal and state Constitutions. Because the state standard under Commonwealth v. Saferian, 366 Mass. 89, 96 (1974), is the "functional equivalent" of the federal standard of Strickland v. Washington, Ouber v. Guarino, 293 F.3d 19, 32 (1st Cir. 2002), the single justice "necessarily rejected" Lee's assertions under the federal Constitution as well as state, Phoenix, 189 F.3d at 27. Under the circumstances, then, the single justice's decision — as to the issue of ineffective assistance of postconviction counsel only — "fairly appear[s] to rest primarily on the resolution of [Lee's federal] claim[], or to be interwoven with th[at] claim[], and [does] not clearly and expressly rely on an independent and adequate state ground."[5] Phoenix, 189 F.3d at 26 (quoting Coleman,

_____

[5] Respondent argues that the single justice's failure to "indicate, specifically or otherwise, that his decision was based on anything other than waiver" distinguishes this case from Phoenix v. Matesanz, where the single justice "specifically indicated that he was not dismissing [the] ineffective assistance claim on the ground of lack of novelty or on some other theory compatible with waiver." 189 F.3d 20, 26 (1st Cir. 1999). But a state court need not explicitly disavow any federal law ground for its decision in order for habeas review to be appropriate. Rather, as discussed, habeas review is proper where the state court decision "fairly appear[s]" to rest on the merits of a federal claim. Coleman v. Thompson, 501 U.S. 722, 735 (1991). Indeed, the only fair reading of the single justice's decision here is that it rested on the merits of the federal claim of ineffective assistance of postconviction counsel, given that he declined to resolve that

-18-

501 U.S. at 735). As a result, the ineffective assistance of postconviction counsel claim has not been procedurally defaulted.

There is, however, an independent bar to habeas relief on this ground. 28 U.S.C. § 2254(i) provides that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254," as this appeal does.[6] See also Martel v. Clair, 132 S. Ct. 1276, 1287 n.3 (2012) ("[Section] 2254(i) prohibits a court from granting substantive habeas relief on the basis of a lawyer's ineffectiveness in post-conviction proceedings . . . ."). Therefore, although Lee's claim of ineffective assistance of postconviction counsel has not been procedurally defaulted, the district court was, in any event, precluded from granting relief on that ground.

-------

claim on grounds of procedural default.

[6] The claim of ineffective assistance of postconviction counsel at issue here arises out of a motion for a new trial filed after Lee's conviction became final on direct review; the motion was not one filed pursuant to Mass. R. App. 19(d)(1), discussed below, prior to plenary review by the SJC. As such, the proceeding at issue is properly characterized as collateral in nature. See Commonwealth v. Bray, 407 Mass. 296, 298 (1990) (citing Commonwealth v. Breese, 389 Mass. 540 (1983))(motion for new trial after final judgment constitutes collateral proceeding).

B.        Whether procedural default of claims of ineffective assistance of trial counsel and prosecutorial misconduct may be excused

We next consider whether the remaining claims of ineffective assistance of trial counsel and prosecutorial misconduct, though procedurally defaulted, may nevertheless be reviewed on the merits.

A claim that has been procedurally defaulted may nevertheless be reviewed by a federal habeas court if the petitioner demonstrates cause for the default and prejudice resulting therefrom, or can show "that failure to consider the federal claim will result in a fundamental miscarriage of justice." Harris v. Reed, 489 U.S. 255, 262 (1989) (internal quotation marks omitted). Lee presses two ostensible causes for default: ineffective assistance of postconviction counsel, and various state agencies' failure to turn over documents to his current counsel. We consider each in turn.

Lee first argues that the attorney who handled his first motion for a new trial in 1989 was constitutionally ineffective in failing to present the trial-ineffectiveness claims raised by his current counsel in the latest motion for a new trial; this postconviction ineffectiveness, Lee maintains, constitutes cause for defaulting the trial claims.

"To establish cause, there must be 'some objective factor external to the defense' which 'impeded counsel's efforts to comply

with the State's procedural rule.'" Lynch, 438 F.3d at 46 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). Although constitutionally ineffective assistance of counsel, at trial or on direct appeal, in failing to preserve a claim for review may constitute cause for default, ineffective assistance of counsel in postconviction proceedings typically will not. Coleman, 501 U.S. at 752. That is because, as the Supreme Court explained in Coleman, there can be no constitutionally ineffective assistance of counsel in a proceeding in which there is no constitutional right to an attorney. Id. "Where a petitioner defaults a claim as a result of the denial of the right to effective assistance of counsel, the State, which is responsible for the denial as a constitutional matter, must bear the cost of any resulting default and the harm to state interests that federal habeas review entails." Id. at 754. But "[a] different allocation of costs is appropriate in those circumstances where the State has no responsibility to ensure that the petitioner was represented by competent counsel." Id.

Lee focuses on two recent Supreme Court cases that set forth, as narrow exceptions to the Coleman rule, specific sets of circumstances in which ineffective assistance of counsel in postconviction proceedings will indeed be imputed to the state,

-21-

thereby constituting cause for procedural default.[7]  In <u>Martinez</u> v.
<u>Ryan</u>, 132 S. Ct. 1309, 1315 (2012), the Court addressed whether
ineffective assistance of counsel during collateral postconviction
proceedings could constitute cause for defaulting a claim of
ineffective assistance of trial counsel, in the context of a state
scheme that prohibited such claims from being raised on direct
review.  The Court observed that "[b]y deliberately choosing to
move trial-ineffectiveness claims outside of the direct-appeal
process, where counsel is constitutionally guaranteed, the State
significantly diminishes prisoners' ability to file such claims."
<u>Martinez</u>, 132 S. Ct. at 1318.  In order to vindicate a prisoner's
right to present such claims, the Court held that ineffective
assistance of counsel in postconviction proceedings can constitute

---

[7]  Respondent argues that Lee has waived his arguments concerning the applicability of these cases, <u>Trevino</u> v. <u>Thaler</u>, 133 S. Ct. 1911 (2013), and <u>Martinez</u> v. <u>Ryan</u>, 132 S. Ct. 1309 (2012), by not raising them before the district court.  Lee filed his habeas petition in July 2007 and the district court rendered its decision in December 2013; <u>Trevino</u> and <u>Martinez</u> were decided in May 2013 and March 2012, respectively.  It is far from clear that a litigant waives an argument premised on new law that postdates the initial filing by nearly six years, where the district court has failed to take action on the petition in the interim.  <u>Cf.</u> <u>Herbert</u> v. <u>Dickhaut</u>, 695 F.3d 105, 109 (1st Cir. 2012) ("There can be no waiver where a party lacked an opportunity to raise an argument."). However, we decline to reach the issue of waiver because, as discussed <u>infra</u>, the rules announced in <u>Trevino</u>, 133 S. Ct. at 1921, and <u>Martinez</u>, 132 S. Ct. at 1318-19, do not apply to Lee's case in any event.  <u>Cf.</u> <u>Yeboah-Sefah</u> v. <u>Ficco</u>, 556 F.3d 53, 68 n.6 (2009) ("[B]ecause we easily reject petitioner's claim on the merits, we need not resolve this dispute [regarding waiver].").

cause for procedural default, provided certain circumstances are present:

> (1) the claim of "ineffective assistance of trial counsel" [is] a "substantial" claim; (2) the "cause" consist[s] of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding [is] the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law _requires_ that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

_Trevino_ v. _Thaler_, 133 S. Ct. 1911, 1918 (2013) (final alteration in original) (quoting _Martinez_, 132 S. Ct. at 1318–19).

A year later, in the case of _Trevino_ v. _Thaler_, the Court extended its holding in _Martinez_ to include not just scenarios where state law literally bars claims of ineffective assistance of trial counsel from being raised on direct review, but also those where, "as a matter of [the procedural system's] structure, design, and operation[,] [it] does not offer most defendants a meaningful opportunity to present [such claims] on direct appeal." 133 S. Ct. at 1921. According to the Texas procedural framework at issue in that case, the ability to raise a claim of ineffective assistance of trial counsel on direct appeal existed as a hypothetical matter, but in practice was so heavily circumscribed as to be rendered effectively illusory. Although the Texas Court of Criminal Appeals had recognized that ineffective assistance of trial counsel claims typically must be substantiated by information in the trial record,

-23-

convicted defendants only have thirty days after sentencing to file a motion for a new trial in order to develop the record on appeal; in addition, the trial court must dispose of such motions within seventy-five days of sentencing. Id. at 1918 (citing Tex. R. App. P. 21.4, 21.8(a), (c)). Critically, however, the trial transcript need only be produced within 120 days of sentencing, and this deadline may be extended. As a result, motions for a new trial often must be made without the assistance of the trial transcript, as was the case for Trevino. Id. at 1918–19 (citing Tex. R. App. P. 35.2(b), 35.3(c)). "Thus, as the Court of Criminal Appeals has concluded, in Texas 'a writ of habeas corpus' issued in state collateral proceedings ordinarily 'is essential to gathering the facts necessary to . . . evaluate . . . [ineffective-assistance-of-trial-counsel] claims,'" which, in practice, cannot meaningfully be presented on direct appeal. Id. (alterations in original) (quoting Ex parte Torres, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997) (en banc)).

Taken together, the Martinez/Trevino exception applies only in jurisdictions that effectively prohibit prisoners from raising ineffective assistance of trial counsel claims on direct appeal, either by letter or operation of the law. But, as Respondent persuasively argues, that is not the state of the law in Massachusetts. Although it is true, as Lee observes, that "the preferred method for raising a claim of ineffective assistance of

-24-

counsel is through a motion for a new trial," <u>Commonwealth</u> v. <u>Zinser</u>, 446 Mass. 807, 810 (2006), the rules governing appeals in first-degree murder cases preserve prisoners' ability to raise such claims on direct review via consolidation, and impose no unrealistic time limits for filing motions for a new trial, or <u>any</u> time limits for disposing of such motions, as Texas does. <u>See</u> Mass. R. App. P. 19(d)(1) (appellant in first-degree murder case shall, within 120 days of appeal being docketed in SJC, serve and file either appellate brief or motion for new trial; time for filing may be enlarged upon showing of good cause); Mass. R. App. P. 19(d)(2) ("If a motion for a new trial is remanded to the Superior Court, the direct appeal of the conviction shall be stayed pending decision on the motion for new trial. . . . An appeal by the defendant from the denial of a motion for new trial shall be consolidated with the direct appeal.").[8] Indeed, direct appeals in capital cases are frequently consolidated with appeals from denials of motions for a new trial. <u>See, e.g.</u>, <u>Commonwealth</u> v. <u>Martin</u>, 467 Mass. 291, 293 (2014) (defendant's direct appeal consolidated with denial of motion for new trial); <u>Commonwealth</u> v. <u>Scott</u>, 428 Mass. 362, 364 (1998) (same); <u>Commonwealth</u> v. <u>Ellison</u>, 376 Mass. 1, 2-3 (1978) (same).

Whereas the Texas system makes it "virtually impossible" to develop a record substantiating an ineffective-assistance claim

---

[8] This rule has been in effect in Massachusetts since 1973.

in time for consideration on direct appeal, Trevino, 133 S. Ct. at 1915 (quoting Robinson v. State, 16 S.W.3d 808, 810–11 (Tex. Crim. App. 2000)), Massachusetts does just the opposite: it encourages the development of such a record via motion for a new trial by allowing appellants 120 days from the docketing of their appeals to do so, which they may choose to do instead of proceeding with direct review, see Mass. R. App. 19(d)(1).  Furthermore, appeals from denials of motions for a new trial that have been consolidated with direct appeals are afforded plenary review pursuant to § 33E, whereas motions for a new trial filed after the SJC has affirmed a conviction on direct appeal are subject to the far narrower "new and substantial" review by the single justice.  See § 33E.  Thus, because Massachusetts does indeed "afford[] meaningful review of a claim of ineffective assistance of trial counsel," Trevino, 133 S. Ct. at 1919, Lee cannot claim the benefit of the Martinez/Trevino exception to the Coleman rule, and any ineffective assistance by the attorney who handled his first motion for a new trial does not constitute cause for procedural default.

We turn next to Lee's second claimed cause for default. Lee argues that "[s]tate government officials have prevented [him] from fully developing his claims of ineffective assistance of counsel and prosecutorial misconduct by concealing evidence."  Lee maintains that this governmental intransigence constitutes "some interference by officials ma[king] compliance [with a state

-26-

procedural rule] impracticable," which suffices to show cause for procedural default.  <u>Murray</u>, 477 U.S. at 488 (citation omitted). The substance of Lee's argument is that officials in the district attorney's office and in various police departments have "reneged" on supposed commitments to provide Lee's current counsel with copies of relevant police reports, grand jury minutes, witness statements, and ballistics reports.[9]

The problem with this contention is that, if true, all it shows is that current counsel is without certain documents; it does not account for whether or not those documents were in the possession of the postconviction counsel who committed procedural default by not raising certain claims in the first motion for a new trial.  Even assuming that that attorney indeed did not have the documents, such a lack provides only an attenuated justification for defaulting ineffective assistance claims.[10]  Lee makes no

---

[9] We are not in a position to express an opinion regarding the veracity of Lee's claims that the district attorney's office and various police departments — not parties to this action — have not cooperated in turning over requested documents.  We note, however, that Respondent substantially complied with Rule 5 of the Rules Governing Section 2254 Cases by filing state court docket sheets, court documents, and prior decisions with his supplemental answer.

[10] In a different section of his brief, Lee argues that the government withheld certain documents from <u>trial</u> counsel, in violation of <u>Brady</u> v. <u>Maryland</u>, 373 U.S. 83, 87 (1963).  Lee forwards this contention while arguing the merits of his prosecutorial misconduct claim; he makes no assertion that a <u>Brady</u> violation constituted cause for procedural default.  <u>See</u> <u>Pratt</u> v. <u>United States</u>, 129 F.3d 54, 62 (1st Cir. 1997) ("[A]rguments not advanced and developed in an appellant's brief are deemed waived.").  Nor could he make such an assertion, where the

attempt to explain, for example, how not having access to documents such as grand jury minutes prevented the postconviction counsel from raising a claim that trial counsel was ineffective in failing to call a competent firearms expert.  See McCleskey v. Zant, 499 U.S. 467, 497 (1991) ("For cause to exist, the . . . government interference . . . must have prevented petitioner from raising the claim.").  Consequently, Lee cannot establish cause for procedural default.  In light of this conclusion, we do not reach the question whether Lee suffered prejudice as a result of the default.

We can still excuse procedural default upon a showing that a failure to review the claims on the merits would result in a "fundamental miscarriage of justice."  Harris, 489 U.S. at 262 (internal quotation marks omitted).  "This is a narrow exception to the cause-and-prejudice imperative, seldom to be used, and explicitly tied to a showing of actual innocence."  Burks v. Dubois, 55 F.3d 712, 717 (1st Cir. 1995) (citing Schlup v. Delo, 513 U.S. 298, 321 (1995)).  In rehearsing the merits of his claims,

foundation of the alleged Brady violation — that "[n]o defense attorney has ever seen police reports of the interviews with the victim" — is premised simply on one unhelpful page of trial transcript.  That page covers a discussion among the defense attorney, prosecutor, and trial judge concerning pretrial motions, in which the latter two discussed the victim's statement while in the hospital that he "wouldn't be surprised if Woody [Janet Brady's ex-husband] did it."  Although defense counsel told the court that he "hadn't heard about Woody before," he did so on the heels of the court allowing Lee's motion to be furnished with all statements made by the victim.  There is no indication in the record that the government failed to comply with this order in advance of trial.

Lee vigorously argues, among other things, that trial counsel failed to put on significant evidence of a third-party culprit; however, Lee has not endeavored to make out a showing of a fundamental miscarriage of justice such as would excuse procedural default. And while Lee's arguments about ineffective assistance of trial counsel invite speculation about what might have happened had his attorney called certain witnesses or pursued different lines of cross-examination, they are just that — speculative. He has not made a showing of actual innocence supported by "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." Schlup, 513 U.S. at 324; cf. Janosky v. St. Amand, 594 F.3d 39, 46 (1st Cir. 2010) ("[T]he petitioner has not attempted to make any such showing [of actual innocence], and none is evident on the face of the record."). His procedurally defaulted claims of ineffective assistance of trial counsel and prosecutorial misconduct therefore cannot be resurrected.

C.      Motion for discovery

Lee contends finally that the district court erroneously denied his motion for discovery. A denial of habeas relief is not appealable unless the district court or court of appeals has issued a certificate of appealability as to the issue or issues that the petitioner wishes to raise. 28 U.S.C. § 2253(c). Here, the

district court determined that a certificate of appealability "should issue on all three claims," namely, ineffective assistance of trial counsel, ineffective assistance of postconviction counsel, and prosecutorial misconduct. Lee, 2013 WL 6865585, at *15. The district court's certificate of appealability did not extend to the denial of the motion for discovery, and this court was not at any time requested to issue a supplementary certificate. Consequently, the issue is waived and we decline to address it. See Peralta v. United States, 597 F.3d 74, 83-84 (1st Cir. 2010).

### III.  Conclusion

The district court properly held that Lee's claims of ineffective assistance of trial counsel and prosecutorial misconduct have been procedurally defaulted. Although the claim of ineffective assistance of postconviction counsel has not been procedurally defaulted, it nevertheless cannot form the basis of habeas relief, per 28 U.S.C. § 2254(i). We therefore AFFIRM the judgment of the district court.