**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Saad Moussa

    v.

Warden, New Hampshire State Prison

Civil No. 12-cv-014-LM
Opinion No. 2016 DNH 048

**O R D E R**

Petitioner, Saad Moussa, has filed a petition for a writ of habeas corpus, under 28 U.S.C. § 2254, challenging his 2009 state court convictions and sentences on three felony stalking charges.  See State v. Moussa, No. 05-S-1993-1995 (N.H. Super. Ct., Rockingham Cty.) ("Criminal Case").  Respondent, the warden of the New Hampshire State Prison ("NHSP"), has filed a motion for summary judgment (doc. nos. 34 and 35), seeking dismissal of Moussa's § 2254 petition (doc. nos. 1, 24, and 25) ("Petition").  Moussa objects to the summary judgment motion.

**Background**

I.   Underlying Offenses and Trial Proceedings

The three felony stalking convictions at issue in this action relate to three letters received by Najwa Moussa ("Najwa"), while she and Moussa were still married.  When Najwa received those letters, dated May 2, June 9, and June 30, 2005, Moussa was incarcerated at the Rockingham County House of

Corrections ("RCHC"), and was subject to a restraining order ("2004 Restraining Order"), which prohibited him from having any direct or indirect contact with Najwa.  Criminal Case, Trial Tr. vol. 1, at 43, 48, 57.

Najwa opened and read each letter upon receipt.  Id. at 47, 57, 59.  The letters were written in Arabic, Moussa and Najwa's native language, and Najwa testified in the Criminal Case that she recognized the handwriting on each envelope and letter as Moussa's.  Id. at 44, 55, 58, 59, 72, 107.  Each of the three letters stated that Moussa had not written the letter, Trial Tr. vol. 2, 137,[1] and that Moussa was unaware that the letters had been sent.  Trial Tr. vol. 1, 46; Trial Tr. vol. 2, 147, 149, 166.  Each letter asked Najwa to drop the criminal charges and divorce proceedings against Moussa.  Trial Tr. vol. 2, at 137-38, 144-50, 155-56, 160-61, 164-65.  Each letter also contained threatening statements.  Trial Tr. vol. 1, 47, 56, 59.

Moussa was indicted on three counts of stalking, one for each letter, pursuant to N.H. Rev. Stat. Ann. ("RSA") §§ 633:3-

---

[1]At trial, Haythram Aukra, an Arabic-English translator testified that he had prepared written English translations of each letter.  During his testimony, Aukra read the entirety of the English translations into the record.  See Trial Tr. vol. 2, 131-38 (May 2 letter); id. at 139-51 (June 9 letter); id. at 153-70 (June 30 letter).  Where the court refers, in this Order, to the contents of any of the letters in English, it refers to Aukra's translation as it appears in the trial transcript.

1, I(c) and II(a)(7); RSA §§ 173-B:9, IV(c); and RSA §§ 173-B:1, I(d). See doc. no. 30, Ex. B. Because Moussa had a prior conviction for violating a restraining order, each stalking offense was charged as a felony.

Several lawyers were appointed to represent Moussa in the pretrial period. Attorney Neil Reardon, the last of those, was appointed after a pretrial conference on December 23, 2008, when Moussa, then proceeding pro se, requested counsel, as Moussa stated he had medical issues that prevented him from representing himself at the upcoming January 2009 trial. The court granted the motion and continued the trial. Moussa then filed a pro se motion in February 2009, asserting that he was dissatisfied with Attorney Reardon's representation and pretrial investigation. The court held a hearing on that motion on March 16, 2009, prior to jury selection on the first day of the trial. After hearing from both Moussa and Attorney Reardon, the trial judge advised Moussa to proceed with Attorney Reardon as his trial counsel, but gave Moussa the option of proceeding pro se, with Attorney Reardon as stand-by counsel, with the caveat that, in either case, the trial would not be continued. After Moussa decided to represent himself, Moussa sought a continuance, which the trial judge denied.

Najwa was the first witness. Najwa testified that some of the threats in the letters were the same threats, in the same words, Moussa had previously made to Najwa. Trial Tr. vol. 1, 105. Najwa took the threats seriously and was afraid for her life and her daughter's life. Id. at 44, 56, 59-60, 81.

Moussa objected to Najwa's testimony concerning the June 9 letter, stating that he had not received a copy of that letter prior to trial. Id. at 48. The State advised the court that copies of the letters had been provided before trial to three attorneys who had previously represented Moussa in the pretrial period, including Attorney Reardon who was then serving as stand-by counsel, and that one of Moussa's attorneys had had two of the letters translated. Id. at 49. The court told Moussa that it would insure he received copies of all of the letters, and the trial continued. Id. at 52.

When Najwa's direct testimony concluded, Moussa cross-examined her. See generally id. at 61-104. Much of the cross-examination consisted of Moussa arguing with the court or attempting to respond to the state's objections to his questions. Id. The record reflects that at times during his cross-examination, Moussa was screaming and yelling at Najwa. See, e.g., id. at 79-81, 105.

4

After numerous unsuccessful attempts to question Najwa, Moussa sought to ask her questions apparently designed to cast doubt on his ability to send the letters from the jail.  See id. at 102-03.  The following exchange took place:

COURT:   Anything else about the letters, sir?

MOUSSA:  Yes, Your Honor.  This is my first question.  This is very simple question.  I have to ask this question.  I have to ask about the letter.  How she received that letter.  Does she have a stamp from the jail or not?  How it become like I send her, if I am in custody.  Okay?  How am I become – send it to her?  The 15th, okay, when she was saying, okay, I told – in the letter, okay, she said I threaten her.  Okay, when the letter it say, Saad love you.  Okay.  He never –

STATE:   Objection, Your Honor.

COURT:   Sir, she testified that she, in her mailbox, got three letters.

MOUSSA:  Your Honor, you do whatever you want.

COURT:   Okay.

MOUSSA:  I'm all set.  Thank you so much.  And I want to tell you one thing before I leave.  This lawyer, I don't want him to do anything –

STATE:   Objection, Your Honor.

MOUSSA:  -- on my behalf.

COURT:   All right.

MOUSSA:  This is the case.  You want to send me to life, send me to life.  But I want to tell you one thing, okay, give me death penalty and don't send me for one day.

5

```
COURT:      So you don't want –

MOUSSA:     Thank you so much.

COURT:      You –

MOUSSA:     That miserable court –

COURT:      Okay.  You don't want to participate any
            further, right?

MOUSSA:     Bye.

COURT:      Okay.
```

Id. at 102-04.  Moussa then left the courtroom and did not return for the remainder of the trial.  Before adjourning for the day, the court instructed the jury that they could draw no negative inference about Moussa's guilt based on the exercise of his right to represent himself, or to voluntarily absent himself from the trial.  Id. at 120-21.

After Najwa testified, Sgt. Eric Lamb of the Salem Police Department ("SPD") testified that each time Najwa received a letter from Moussa, she reported it to Sgt. Lamb.  Id. at 43-44, 48, 57, 110, 112-13, 116.  Sgt. Lamb testified that he forwarded the letters to the State Lab for fingerprint analysis, id. at 111, 114, 116, and he testified regarding his further investigation concerning the June 30 letter.  Id. at 117.  Sgt. Lamb testified:

> In [the June 30 letter] it has specified that there
> was a Middle Eastern subject who had just gotten

6

released form (sic) the jail and that he was going to threaten Najwa and possible (sic) injure her. He was going to act on Saad's behalf to do something to Najwa and she was very concerned about that – very afraid that that may happen.

Id. Sgt. Lamb contacted the RCHC and found out that a man of Middle Eastern descent, Oner Nusret, had recently been released from the RCHC. Id. at 117-118. Najwa told Sgt. Lamb that she did not know Nusret. Id. at 119. Sgt. Lamb spoke to Nusret who stated he knew Moussa from the RCHC. Id. at 118.

Lisa Corson, a criminalist at the State Lab, testified that she compared fingerprints found on each of the letters with a "known recording" of Moussa's fingerprints. Trial. Tr. vol. 2, 182, 186, 188. The known recording consisted of cards that had Moussa's name, address, and fingerprints on them. Id. at 182-83, 186, 188-89. Corson testified that she matched one fingerprint on each letter to Moussa's fingerprint cards. Id. at 182-83, 186, 188.

The evidence closed on March 17, 2009. Id. at 202. The State made a closing argument to the jury, id. at 203-20, and the court instructed the jury on the law. Id. at 220-38. The following day, March 18, 2009, the jury found Moussa guilty on each of the three stalking charges. Trial Tr. vol. 3, 241.

7

## II. Moussa's Health Issues

After Moussa left the courtroom on March 16, 2009, officers transported him to the RCHC, where he was an inmate. That evening, Moussa asserts, he had severe chest pains and other medical complaints, and was transported to Exeter Hospital by ambulance at approximately 3:00 a.m. on March 17, 2009. See doc. no. 43, Ex. Y. Moussa's treating physician on March 17, 2009, admitted him to the hospital, where Moussa underwent a cardiac catheterization procedure on March 18, his third since August 2008. See id.

There is nothing in the trial record suggesting that the court received notice of Moussa's hospitalization before the trial concluded. The record from Moussa's state post-conviction proceedings, however, includes two unsworn documents bearing the signature of Paul Roberts, a corrections officer who had been assigned to watch Moussa at Exeter Hospital on March 17, 2009. The first document states that Roberts spoke on the phone with an "officer" on March 17, 2009, who asked if Moussa would be attending court on that date, and that Roberts told the officer that Moussa was going to have surgery. Doc. no. 36-11, 1. The second document, dated December 21, 2011, states that Roberts believed that the first document addressed the court's awareness of Moussa's health issues and hospitalization. Doc. no. 36-11,

8

2.  Nothing else in the record suggests that, prior to the conclusion of trial, the trial court received notice of Moussa's March 17-18, 2009, hospitalization.

III.  Sentencing - May 27, 2009

Moussa's sentencing hearing was scheduled for May 27, 2009. Prior to that hearing, Moussa filed a motion requesting that the court appoint him counsel for sentencing. State v. Moussa, 164 N.H. 108, 124 (2012). On the day of sentencing, after hearing from both parties on the issue, the court denied Moussa's request for counsel, as follows:

> This gentleman has now been part of the criminal justice system for almost five years. During the course of that period of time, he's had several lawyers. He's mentioned two this morning. Joe Malfitani, who's one of the top five criminal lawyers in this state and has been for many years, has represented him. Neil Reardon has also been a 25-year lawyer, dealing exclusively in criminal matters, has represented him. And in both of those instances, he was unable to communicate and work with those lawyers. It would be highly unlikely that any other lawyer that I might appoint for him would have any more success that (sic) those seasoned criminal lawyers have had in the past, and that's why I'm not appointing a lawyer for him with respect to the issue of sentencing.

Sent'g Tr. at 38-39.

The court then imposed the maximum sentence available for the charges, three 3½ – 7 year prison terms, to be served consecutively to one another, and to the prison sentence Moussa was serving at the time of sentencing. See doc. no. 30, Ex. B.

9

In imposing this sentence, the court stated:

> Now, if you look at these three charges, they involve – they're the same charge in the sense that they're the same crime, stalking.  The methodology is the same, letter writing.  The period of time between the first and the last letter is 60 days or less.  I think the temptation for anyone – and I'm not now referencing – and I have in mind my colleagues on sentence review – the temptation is to look at these three matters and say that there's some stand committed time that should be ordered in one, but because the other two are so similar and so close in time, a consecutive suspended sentence would probably be in order.

> And in 99 out of 100 cases, that would be the approach that I would take.  I've had a lot of these domestic violence dispute matters over the years.  And the temptation is to look at these three charges, consider the conduct being essentially the same and not warranting consecutive stand committed sentences.

> But this is the exception.  This is the exception. This gentleman has been confined now for nearly five years with respect to this domestic situation that he's been in.  His attitude towards his ex-wife and the rest of the domestic proceedings has never changed.  He is as defiant now as he was at the time of the original restraining order back in 2004.  If you look at the trial that he's been involved in, his attitude, demeanor has never changed.  He has – in the vernacular, he has never gotten it.  He doesn't get it.  Most times, you have people in domestic situations who do make threats, and they are confined, usually for a few days, sometimes for a few weeks, maybe even sometimes for a few months, but eventually they get it.  Eventually the conduct stops. Eventually they can work with counsel.  Eventually they can accept reasonable dispositions for their actions.  And none of that is applicable to Mr. Moussa's case.

> His attitude and demeanor now is the exact same as it was in 2004.  The threats that the victim is concerned about now are exactly the same as the threats that she

10

was receiving back in 2004.  And unless there's a change in that demeanor – and I've seen none to date – then he is a real, real threat risk.  Having said that, I do believe that the State's recommendations with respect to all three of these matters are the appropriate recommendations based upon the history of these cases.  So I am going to impose consecutive three and a half to seven year state prison sentences on all three of these matters.  And they'll also be consecutive to the other cases that have been tried with this gentleman in the past.

Let me say this, though.  There is a right that this gentleman has that is not invoked that often.  And I'll say this for the record.  It's RSA 651.20.  The gentleman has the right, based upon certain conditions and time frames to petition this Court for a review of his sentences.  Having in mind what they are, he will have that right here.  He will be able to file a motion to suspend or defer some of the sentences that he's being given today.  And I am going to lend a – I'm not going to forget this case.  I have thousands of them out there, over 25 years, but this is a case which I won't forget.  If I see any positive changes in his attitude and the professionals that may be involved with him indicate that he's finally gotten it, he deserves some attention, he deserves some consideration, I'm willing to do that.  I don't look at 651.20 as being some arbitrary statute that's not entitled to any real meaning.  In this case, it has some teeth, and I'm more than willing to stay involved in this gentleman's cases, but the keys to the jail are really up to him.  He's got to show a tremendous change in attitude about virtually all of his thought processes.  And I've just seen none to date, so the State's recommendations under these – for these reasons are more than appropriate, and they, in fact, will be ordered and imposed herein.

Id. at 39-42.

11

## IV.  Direct Appeal

Moussa appealed his conviction to the New Hampshire Supreme Court ("NHSC").  See Notice of Appeal (June 29, 2009) (doc. no. 30, Ex. A).  In his pro se notice of appeal, Moussa raised the following issue:

> The defendant had No counsel and Not presented at the trial due to his medical condition issues he have and move by the Ambulance to the Exeter Hospital due to heart Attack and had a Surgery in the first day of his trial, which May (sic) 16, 2009, after he spend 3 days at the Hospital.  The defendant's did Not have a fair trial.

Id.  Chief Appellate Defender Christopher Johnson was appointed to represent Moussa on appeal.  Attorney Johnson obtained permission to brief issues not raised in the notice of appeal.  See Def's Br., Oct. 24, 2011 (doc. no. 25-1, Ex. A; doc. no. 30, Ex. F).  The NHSC affirmed Moussa's convictions and sentence.  See Moussa, 164 N.H. at 113.

## V.  Motion for New Trial

On December 10, 2010, Moussa filed a motion for a new trial in the RCHC.  See Def.'s Mot. New Trial, Dec. 10, 2010 (doc. no. 30, Ex. C).  In his motion, Moussa argued that he was denied his Sixth and Fourteenth Amendment rights when: Moussa's trial was conducted in his absence, when his absence was not voluntary; the trial court denied Moussa a continuance; and the trial court improperly denied Moussa counsel for sentencing.  See id.

12

In its objection to Moussa's motion for a new trial, the State argued that Moussa never indicated to the court on March 16, 2009, that he was suffering from any health issues, and did not notify the court that he had been in the hospital during or after the trial, until his sentencing on May 27, 2009.  See State's Obj. to Def's Mot. New Trial, Jan. 21, 2011 (doc. no. 43, Ex. X).  To the contrary, the State argued, everything in the trial record indicates that the court believed that Moussa had voluntarily absented himself from the trial; Moussa waived his right to counsel, and neither requested new counsel to represent him at trial, nor expressed an intention to obtain private counsel.  See id.  The trial court denied the motion for new trial "[f]or all of the reasons set forth in the State's objection."  See Criminal Case, Feb. 11, 2011, Order (doc. no. 30, Ex. M).

Moussa appealed the trial court's decision.  See id.  The NHSC declined the appeal on May 19, 2011.

VI.  Sentence Review

After Moussa was sentenced, he appealed his sentence to the New Hampshire Superior Court Sentence Review Division.  The Sentence Review Board ("SRB") upheld the sentence without providing reasons for its decision.  See Criminal Case (N.H. Super. Ct., Sent. Rev. Div., Sept. 23, 2010) (doc. no. 25-1, Ex.

13

D).  Moussa filed a petition challenging that decision in the NHSC, and counsel was appointed to represent him in that proceeding before the NHSC.  See In re Moussa, No. 2011-0005 (N.H. Apr. 7, 2011) (doc. no. 25-1, Ex. D).  The NHSC affirmed the SRB decision, finding that the sentence was reasonably supported by the record before the trial court and the SRB and did not constitute an unsustainable exercise of discretion.  See In re Moussa, No. 2011-0005, slip op. at 2-3 (N.H. June 3, 2013) (doc. no. 25-1, Ex. D).

The NHSC granted Moussa leave to file a pro se motion to reconsider.  See id., Order, June 26, 2013 (doc. no. 25-1, Ex. D).  In his motion to reconsider, Moussa argued that the SRB decision violated his rights under the Fifth, Eighth, and Fourteenth Amendments.  See id., Pet'r's Mot. Recons., July 5, 2013 (doc. no. 25-1, Ex. D).  The NHSC denied the motion for reconsideration without issuing a statement of reasons.  See id., Order, Aug. 20, 2013 (doc. no. 25-1, Ex. D).

VII. Motion to Modify Sentence

On July 8, 2013, Moussa filed a motion seeking to suspend the remainder of his sentence, on the basis that he had made the attitude and behavioral changes the court had discussed at Moussa's May 29, 2009, sentencing hearing.  See Mot. Modify Sent., July 8, 2013 (doc. no. 25-1, Ex. E).  The court granted

14

Moussa's motion, over the state's objection. See, Order (N.H. Super. Ct., Rockingham Cty., Dec. 12, 2013) (doc. no. 25-1, Ex. E). The State filed a petition for a writ of certiorari in the NHSC, maintaining that the sentencing court acted outside of its authority under RSA § 651:20 when it suspended Moussa's sentence. See In re N.H., No. 2014-0099 (N.H.), Pet. Writ Cert., Feb. 7, 2014 (doc. no. 25-1, Ex. F; doc. no. 30, Ex. Q); State's Br., May 22, 2014 (doc. no. 25-1, Ex. F; doc. no. 30, Ex. S); State's Mem. of Law in lieu of Reply Br., October 23, 2014 (doc. no. 25-1, Ex. F; doc. no. 30, Ex. U).

In responding to the State's petition, Moussa, through counsel, briefed only arguments based on state law. See In re N.H., Def.'s Br., June 11, 2014 (doc. no. 25-1, Ex. F; doc. no. 30, Ex. T). With the NHSC's permission, see id., Order (July 11, 2014), Moussa asserted federal constitutional claims in a pro se supplemental brief. See id., Def's. Pro Se Suppl. Br., June 16, 2014 (doc. no. 25-1, Ex. F). The NHSC ruled in favor of the State, reversing the sentencing court's order modifying Moussa's sentence. See id., Slip Op., 5 (July 11, 2014).

VIII. State Habeas Petition

Moussa filed a petition for a writ of habeas corpus in the Merrimack County Superior Court ("MCSC"). See Moussa v. Gerry, No. 217-2013-CV-0002 (N.H. Super. Ct., Merrimack Cty.) Pet. Writ

15

Habeas Corpus, Nov. 5, 2012 (doc. no. 25-1, Ex. B). The MCSC found that in his habeas petition, Moussa "alleg[ed] (1) ineffective assistance of trial counsel; (2) that he was forced to appear pro se at trial against his will; (3) that trial continued without him, and he claims he did not consent to this; and (4) ineffective assistance of trial counsel." Id., Order (Mar. 19, 2013) (doc. no. 25-1, Ex. B). The court held a hearing on the motion on March 8, 2013. Id. at 1.

On March 19, 2013, the MCSC issued an order stating, "This Court will not hear or address Moussa's first three arguments because they re-allege the exact issues the New Hampshire Supreme Court has already determined did not infringe Moussa's constitutional rights." Id. The court then granted leave for the State to depose Attorney Johnson, which was conducted on May 1, 2013.

On December 5, 2013, after both parties submitted supplemental briefing, the MCSC denied habeas relief on Moussa's ineffective assistance of appellate counsel claim. See id., Order, 1 (Dec. 5, 2013) (doc. no. 25-1, Ex. C; doc. no. 30, Ex. V). The court found that Attorney Johnson's decisions not to brief certain issues, and to remove issues from a draft brief, were strategic, based on Attorney Johnson's professional judgment, and were not the product of deficient representation.

16

See id. at 3.  Further, the court found that the claims Attorney Johnson decided not to brief were frivolous, and thus Moussa was not prejudiced by their omission.  See id. at 3-4.

Moussa filed a notice of discretionary appeal in the NHSC, seeking reversal of the denial of his state habeas action.  See Moussa v. Gerry, No. 2014-0013 (N.H.), Notice of App., Jan 5, 2014 (doc. no. 25-1, Ex. C; doc. no. 30, Ex. V).  The NHSC declined the appeal.  See id., Order (Apr. 3, 2014) (doc. no. 25-1, Ex. C; doc. no. 42, Ex. Z).

IX.  Federal Habeas Claims

The Petition here contains the following claims[2]:

1.  Moussa's Sixth and Fourteenth Amendment rights were violated when the trial court forced Moussa to choose between representing himself or going to trial with counsel who, Moussa alleged, was providing ineffective assistance of counsel.

2.  Moussa's Sixth and Fourteenth Amendment rights were violated when the trial court denied Moussa's request for a brief continuance to allow him time to find a private attorney, as Moussa's court-appointed attorney had failed to adequately prepare for trial.

3.  Moussa's Sixth and Fourteenth Amendment rights were violated when the RCSC held proceedings in his absence, when his absence was involuntary and caused by a medical crisis.

---

[2]In its September 30, 2014, Order (doc. no. 26), the court used different numbering and wording for the same claims. Throughout this Order, the court refers to the claims by the numbers used here.

17

4.    Moussa's Sixth and Fourteenth Amendment rights were violated when the trial court improperly admitted inculpatory evidence at trial, a letter and its translation, that had not been provided to Moussa in pretrial discovery.

5.    Moussa's Sixth and Fourteenth Amendment rights were violated when the trial court commented on certain evidence in the case in such a manner as to give credence to the most inculpatory interpretation of that evidence.

6.    Moussa's Sixth and Fourteenth Amendment rights were violated at trial when the court allowed inadmissible evidence to be admitted, in that: (a) Sgt. Lamb testified to inadmissible hearsay statements made to him that served to corroborate Najwa's testimony; and (b) Criminalist Corson referred, in her testimony, to fingerprint cards that purported to bear Moussa's fingerprints, without the cards having been properly authenticated.

7.    Moussa's Sixth and Fourteenth Amendment rights were violated when the trial court refused Moussa's request for court-appointed counsel to represent Moussa at sentencing, finding that Moussa had, by his conduct, waived his right to counsel at sentencing.

8.    Moussa's Eighth and Fourteenth Amendment rights were violated when the sentencing court improperly applied the sentence enhancement contained in RSA § 173-B:9, and thus sentenced Moussa on three felony counts of stalking, when the criminal stalking statute, RSA § 633:3-a, VI(b), only allowed those offenses to be charged as misdemeanors.

9.    Moussa's Fourteenth Amendment rights were violated when the RCSC denied Moussa an evidentiary hearing on his motion for a new trial.

10.  Moussa's Eighth Amendment rights were violated when the SRB left Moussa's sentences unchanged, and those sentences were disproportionately harsh for his crimes, and exceeded, by a large margin, the sentences other criminal defendants in New Hampshire had received on similar charges in the five years prior to Moussa's SRB hearing.

18

11. Moussa's Eighth and Fourteenth Amendment rights were violated when he was denied the ability to obtain modification and/or suspension of his sentences outside the parameters of RSA § 651:20.

12. Moussa's Fourteenth Amendment rights were violated when the MCSC denied Moussa an evidentiary hearing on his state habeas petition.

13. Moussa's Sixth Amendment right to the effective assistance of trial counsel was denied when Attorney Reardon: (a) failed to conduct adequate pretrial investigation, and (b) failed to subpoena exculpatory witnesses to trial.

14. Moussa's Sixth Amendment right to the effective assistance of appellate counsel was denied when Attorney Johnson: (a) failed to raise any federal constitutional challenge to the SRB decision concerning Moussa's sentence, and (b) refused to raise, in Moussa's direct appeal, a claim for relief based on the ineffective assistance of trial counsel.

## Discussion

I. Claims Decided on the Merits in State Court

A. Standard of Review

A federal court may grant habeas corpus relief "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); see also Cullen v. Pinholster, 563 U.S. 170, 181 (2011). When a prisoner brings a claim in federal court that was adjudicated on the merits in State court proceedings,

> [f]ederal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision was contrary to

19

federal law then clearly established in the holdings of th[e Supreme] Court, or that it involved an unreasonable application of such law, or that it was based on an unreasonable determination of the facts in light of the record before the state court.

Harrington v. Richter, 562 U.S. 86, 100 (2011) (internal quotation marks and citations omitted).

A state court's ruling is contrary to federal law either when it adopts a rule that contradicts the governing law set forth in the Supreme Court's cases or when it reaches a different result from a Supreme Court decision under a set of facts that are materially indistinguishable. . . . To be unreasonable . . . the application of federal law must be more than incorrect or erroneous. In other words, some increment of incorrectness beyond error is required. Finally, we only overturn state court factual determinations that are unreasonable in light of the record.

Rosenthal v. O'Brien, 713 F.3d 676, 683 (1st Cir. 2013) (internal quotation marks and citations omitted). The petitioner bears the burden both of showing that the state court decision is contrary to, or involves an unreasonable application of, established federal law, and of rebutting the presumption of correctness of state court factual findings by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

B.   Claims 1 – 3: Self-Representation, Denial of Continuance, and Absence from Trial

In the claims identified above as Claims 1, 2, and 3, Moussa asserts that his Sixth Amendment right to a fair trial, to counsel, and to confront the witnesses against him were

20

violated when: the trial proceedings were held in his absence when Moussa did not voluntarily waive his right to be present at trial; Moussa was forced to choose between going to trial with ineffective counsel and representing himself; and Moussa's request for a brief continuance of the trial was denied, depriving him of the ability to obtain private counsel. Moussa did not raise any of these issues at the time of trial. Moussa first sought relief concerning his allegedly involuntary absence from trial in his notice of direct appeal of his conviction, see doc. no. 30, Ex. A, but appellate counsel did not brief that issue and the NHSC did not allow Moussa to file a pro se supplemental brief raising the issue. See Moussa, No. 2009-0451, Order, Dec. 7, 2011 (doc. no. 25-1, Ex. A).

Moussa did raise the issues in Claims 1 – 3, however, in his motion for a new trial in the RCSC. See Criminal Case, Def's Mot. New Trial, Dec. 10, 2010 (doc. no. 30, Ex. C). In denying Moussa's motion, the trial court explicitly adopted the reasoning set forth in the State's objection to Moussa's motion, id., Order, Feb. 11, 2011 (doc. no. 30, Ex. M), thereby finding that:

- On the day of trial, Moussa never indicated to the court that he was having a medical problem or that he was leaving the courtroom due to medical issues;

- Moussa's allegations that he was incoherent when leaving the courtroom were not true;

21

- Moussa voluntarily absented himself from the courtroom;

- Moussa stated in both his presentence investigation interview and in his presentencing motions that he left the trial because he believed he was not getting a fair trial and the trial was not going his way, and he did not raise any medical reasons in either the presentence investigation interview or in his presentencing motions;

- Moussa voluntarily waived his right to counsel after being told that the trial would not be continued, and that he had the choice to proceed either with Attorney Reardon or pro se.

See id.; see also, St.'s Obj. Mot. New Trial, Jan. 21, 2011 (doc. no. 43, Ex. X).

"If the last state court to review a petitioner's case reaches the merits of a federal claim presented to it, any bar to federal court review is lifted." Gunter v. Maloney, 291 F.3d 74, 80 (1st Cir. 2002) (citing Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991)). The RCSC resurrected those claims by adjudicating them on the merits. Because the RCSC's February 14, 2011, Order denying the motion for new trial is the last reasoned decision on the merits of those claims, this court must defer to that court's decision unless Moussa can demonstrate that the decision is contrary to, or involves an unreasonable application of, established Supreme Court precedent, or is based on a finding of fact that is unreasonable in light of the record then before court. See 28 U.S.C. § 2254(e)(1).

A criminal defendant who is denied counsel at trial, absent a voluntary and intelligent waiver of his right to counsel, may state a claim under the Sixth Amendment. See Marshall v. Rodgers, 133 S. Ct. 1446, 1449 (2013). Similarly, a defendant has a right to be present at all stages of his criminal trial, and a conviction obtained where the defendant was not afforded the right to appear at trial may be reversed. See Crosby v. United States, 506 U.S. 255, 259 (1993). However, the Supreme Court has acknowledged an exception to that rule, in that a defendant in a noncapital case may waive his right to be present at trial "'if, after the trial has begun in his presence, he voluntarily absents himself.'" Id. at 260 (quoting Diaz v. United States, 223 U.S. 442, 455 (1912)).

Here, the RCSC reasonably found, on the record before it, that Moussa voluntarily absented himself from trial, and thus waived his right to be present at trial. The record also supports the finding that Moussa's waiver of counsel and decision to represent himself was knowing and voluntary. Moussa has failed to show that the decision was contrary to or involved an unreasonable application of Supreme Court law. Therefore, Moussa may not obtain habeas relief on the claims identified above as Claims 1 - 3.

C.    Claim 7: Denial of Sentencing Counsel

Moussa asserts that his Sixth Amendment right to counsel was violated when he was denied sentencing counsel based on the court's finding that, despite his request, Moussa had, voluntarily and knowingly waived his right to counsel at sentencing by his demonstrated inability to cooperate with several previous attorneys.  See Sent. Tr. 38-39.  The trial court further found that the lack of counsel at sentencing did not prejudice Moussa, as the trial judge who imposed the sentence had presided at trial, and had reviewed two detailed Presentence Reports that provided the court with the information it utilized in deciding Moussa's sentence.  Id.

Moussa raised this issue in the direct appeal of his conviction, alleging that the denial of sentencing counsel violated Moussa's Sixth Amendment rights.  Because the NHSC denied this claim on its merits, this court applies a deferential standard of review.  See 28 U.S.C. § 2254(e)(1).

A defendant "has the right to 'proceed without counsel when he voluntarily and intelligently elects to do so.'"  Marshall, 133 S. Ct. at 1449 (citations omitted).  At the time of Moussa's sentencing, the Supreme Court had not explicitly determined "what rule the Sixth Amendment . . . establishes for postwaiver requests of appointment of counsel," and had not "explicitly

24

addressed a criminal defendant's ability to re-assert his right to counsel once he has validly waived it." Id. (internal quotation marks and citation omitted).

Because the Supreme Court has not established clear precedent on the question of whether, or under what circumstances, a Sixth Amendment violation arises from the denial of post-waiver request for appointed counsel, this court cannot find that the NHSC's decision contravened or unreasonably applied such precedent. The state court decisions were based on reasonable findings of fact in light of the record before those courts. Accordingly, this court defers to the NHSC decision, finding no Sixth Amendment violation in denying Moussa sentencing counsel, and grants summary judgment on Claim 7.

D.    Claim 10: Sentence Review

Moussa argues that the SRB erred in upholding his sentence, in violation of his Eighth Amendment rights. Moussa raised his federal constitutional challenges to the SRB decision in a pro se motion to reconsider filed in the NHSC. See In re Moussa, No. 2011-0005, Mot. Recons., July 5, 2013 (doc. no. 25-1, Ex. D). The NHSC denied that motion to reconsider, without issuing a statement of reasons. See In re Moussa, No. 2011-0005, Order, Aug. 20, 2013 (doc. no. 25-1, Ex. D).

Where federal claims are raised in a state proceeding and the state court denies the relief requested without expressly ruling on each federal claim, there is a rebuttable presumption that the state court adjudicated the federal claims on the merits. See Johnson v. Williams, 133 S. Ct. 1088, 1096 (2013). Moussa has not effectively rebutted that presumption here. Cf. id. (presumption may be rebutted in "unusual" circumstances, where, for example, state court omitted any consideration of federal claims out of sheer inadvertence). This court presumes that the NHSC rejected Moussa's Eighth Amendment proportionality arguments on the merits, in upholding Moussa's sentence. Thus, this court's review of the NHSC's rejection of that claim is deferential. See 28 U.S.C. § 2254(e)(1).

"[T]he Eighth Amendment contains a 'narrow proportionality principle,' that 'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are grossly disproportionate to the crime.'" Graham v. Florida, 560 U.S. 48, 59-60 (2010) (quoting Harmelin v. Michigan, 501 U.S. 957, 997, 1000-1001 (1991)). Where a proportionality challenge to a sentence involves the length of the sentences, "the Court considers all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive." Graham, 560 U.S. at 59.

To determine whether a sentence is grossly disproportionate in a particular case, the court first compares the gravity of the offense and the severity of the sentence. Id. at 60.

> "[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality" the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. If this comparative analysis "validate[s] an initial judgment that [the] sentence is grossly disproportionate," the sentence is cruel and unusual.

Id. (internal citations omitted). The sentencing hearing transcript includes a cogent statement of reasons why the sentence for Moussa was longer than the sentences the trial judge believed might have been imposed in "99 out of 100" cases. The factual findings underlying the NHSC decision appear reasonable in light of the record before that court. Nothing in the record manifests that the NHSC applied a legal standard in reviewing Moussa's sentence that could be deemed contrary to or an unreasonable application of the Supreme Court's proportionality precedent, cited above. Accordingly, Moussa cannot obtain habeas relief on Claim 10, and summary judgment is granted as to that claim.

27

E.   Claims 13 and 14: Ineffective Assistance of Counsel

Moussa asserts here, as he did in his state habeas petition, that his Sixth Amendment rights were violated because Attorney Reardon provided him with ineffective assistance of counsel at trial and Attorney Johnson provided him with ineffective assistance of counsel in his direct appeal.  The relevant federal standard for evaluating an ineffective assistance of counsel claim requires the petitioner to show that: (1) counsel's performance "fell below an objective standard of reasonableness," and (2) there is a "reasonable probability that, but for counsel's unprofessional errors," petitioner would have prevailed on those issues.  See Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).

1.   Trial Counsel: Claim 13

After making an appropriate inquiry of both Moussa and Attorney Reardon concerning Moussa's complaints about Attorney Reardon's performance, Trial Tr. vol. 1, 9-14, the court found that Attorney Reardon had adequately investigated the case and prepared for trial, and that Attorney Reardon's actions were consistent with a proper exercise of professional judgment and strategic decisionmaking.  In its opinion affirming Moussa's convictions, the NHSC reviewed the trial court's findings about Attorney Reardon's performance and the record of the trial court

28

proceedings, and determined that Attorney Reardon's actions were supported by reasonable professional judgment, and that therefore, "the trial court did not unsustainably exercise its discretion in requiring the defendant to choose between self-representation and representation by Reardon." Moussa, 164 N.H. at 118.

The NHSC decision is not contrary to, and is not an unreasonable application of, the Strickland standard. Further, the NHSC did not unreasonably find the facts based on the record then before it. Accordingly, this court must defer to the state court's decision, and summary judgment is granted as to Claim 13.

### 2. Appellate Counsel: Claim 14

In Moussa's state habeas action, the court, after considering the evidence before it, and applying the appropriate legal standard, found that Attorney Johnson's representation of Moussa was objectively reasonable, and that Attorney Johnson's decisions were the product of appropriate professional judgment. See Moussa, No. 217-2013-CV-0002, Order, Dec. 5, 2013 (doc. no. 25-1, Exs. B, C; doc. no. 30, Ex. V). The state habeas court further found that Attorney Johnson's decision not to brief certain claims did not prejudice Moussa's appeal. Because the state habeas court, the last state court to issue a reasoned

29

opinion on the issue, properly applied the Strickland standard, and reasonably found the relevant facts based on the record before it, this court defers to its finding that Moussa was not denied the effective assistance of appellate counsel. Accordingly, summary judgment is granted as to Claim 14.

## II. Procedurally Defaulted Claims

### A. Procedural Default Standard

"A state court's invocation of a [state] procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Respondent "bears the burden '. . . of persuading the court that the factual and legal prerequisites of a default . . . are present.'" Pike v. Guarino, 492 F.3d 61, 73 (1st Cir. 2007) (citation omitted).

A federal court cannot review a procedurally defaulted claim in a § 2254 petition, unless the petitioner demonstrates either "cause" and "prejudice," or "actual innocence." Costa v. Hall, 673 F.3d 16, 25 (1st Cir. 2012); see also Lee v. Corsini, 777 F.3d 46, 62 (1st Cir. 2015). Cause "'ordinarily turn[s] on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with

the State's procedural rule.'" Costa, 673 F.3d at 25 (citation omitted).  To prove prejudice, a petitioner must demonstrate that the violations of federal law "worked to his <u>actual</u> and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  <u>Id.</u> at 26 (internal quotation marks and citation omitted) (emphasis in original).

B.    <u>Claim 4: Admission of June 9 Letter</u>

In Claim 4, Moussa asserts that the trial court violated his Sixth and Fourteenth Amendment rights by improperly admitting inculpatory evidence, the June 9 letter, when Moussa had not personally received a copy of the letter prior to the commencement of trial.  Moussa objected to the admission of the evidence at trial, although he did not argue that the admission of the letter constituted a federal constitutional violation. Trial Tr. vol. 1, 48.  Moussa's appellate counsel did not brief the claim.  <u>See</u> Def.'s Br., Oct. 24, 2011 (doc. no. 25-1, Ex. A).  Moussa attempted to assert the claim as a federal constitutional violation in a pro se motion for reconsideration, <u>see</u> Def.'s Mot. Recons., Sept. 25, 2012 (doc. no. 25-1, Ex. A), but the NHSC declined to consider his pro se filing.  <u>See</u> <u>Moussa</u>, No. 2009-0451, Order (Oct. 16, 2012) (doc. no. 25-1, Ex. A).

If a claim "was not presented to the state courts and it is clear that those courts would have held the claim procedurally barred," this court may deem the claim to be procedurally defaulted. Pike, 492 F.3d at 73 (citation omitted). In New Hampshire, the failure to brief a claim on appeal constitutes a waiver of the claim. See Town of Londonderry v. Mesiti Dev., Inc., No. 2014-0291, 2015 WL 7816131, *2 (N.H. Dec. 4, 2015) (citing State v. Blackmer, 149 N.H. 47, 49 (2003); State v. Berry, 148 N.H. 88, 93 (2002)). Accordingly, because Claim 4 was not briefed on appeal, the court finds that it was procedurally defaulted in the state courts.

Moussa has demonstrated that his attorney decided to omit the claim from Moussa's appellate brief, and that he did so without Moussa's agreement. However, as explained above in this court's discussion of Claim 14, Moussa was not denied his Sixth Amendment right to the effective assistance of appellate counsel when Attorney Johnson chose not to brief the issue of whether the trial court erred by admitting the June 9 letter. Accordingly, Moussa cannot rely on the ineffective assistance of appellate counsel as "cause" for the procedural default of his federal jury instruction claim. Cf. Costa, 673 F.3d at 25 (determinations of "cause" typically turn on whether prisoner can show that some factor, "'external to the defense,'" impeded

his or her effort to comply with state procedural rule (citation omitted)).  Moussa has thus failed to demonstrate cause and prejudice for the default of Claim 4.

    C.    <u>Claim 5: Impermissible Comment on Evidence</u>

In Claim 5, Moussa asserts that the trial court impermissibly commented on the evidence at trial, in violation of Moussa's Sixth Amendment rights.  After Moussa left the courtroom during Najwa's cross-examination, the State conducted the following redirect examination:

> STATE: Now the defendant asked you if he ever hurt you, threatened you, things of that nature. Did the defendant ever hurt you?
>
> NAJWA: He used to – he was violent in a way – he did not consider himself violent.
>
> STATE: Now you said that he was violent.  What would he do?
>
> COURT: Well, let me stop.  Let me just remind the State too that we're trying here, the three letters and whether or not there's a basis for her feeling threatened.  Her testimony is, as yet unchanged, that she had a good faith basis for feeling threatened.
>
> STATE: I understand that but just for the record, Judge, he opened the door when he asked her if he was violent towards her, pushed her, hit her, anything of that nature which is –
>
> COURT: And her answer to the general question is yes.  I don't think we need to know the details.

33

Trial Tr. vol. 1, 106-07. Moussa argues here, as he did in his direct appeal, that the trial court, by its comments, endorsed the most incriminating and prejudicial interpretation of Najwa's arguably ambiguous testimony. See Def.'s Br., 20-25, Oct. 24, 2011 (doc. no. 25-1, Ex. A).

As no contemporaneous objection was made at trial concerning the court's description of Najwa's testimony, Moussa raised the issue as plain error on direct appeal. The NHSC applied a "plain error" standard in reviewing Moussa's improper comment claim. See Moussa, 164 N.H. at 118. Although Moussa reasserted this claim in his state habeas petition, the MCSC expressly declined to address the merits of that claim. See Moussa, No. 217-2013-CV-0002, Order, 1, Mar. 19, 2013 (Doc. No. 25-1, Ex. B). This court finds that Claim 5 was procedurally defaulted in the state courts. Cf. Obershaw v. Lanman, 453 F.3d 56, 68 (1st Cir. 2006) (where procedural default is caused by failure to object at trial, fact that state court undertakes plain error review does not remove procedural default).

To the extent Moussa asserts that the procedural default of his improper judicial comment should be excused because it was caused by his absence at trial, the court notes that, as explained above in this court's discussion of Claims 1-3, Moussa

voluntarily and intelligently waived his right to be present at trial and to be represented by counsel at trial. He cannot now claim, therefore, that his failure to object at trial was based on a force external to the defense. Moussa has failed to show that any objective factor external to the defense impeded his effort to comply with the state procedural rule requiring a contemporaneous objection at trial to preserve an issue for appellate review.

As to a demonstration of prejudice, the court defers to the NHSC's finding that Moussa was not prejudiced by the court's comment on the evidence, as that finding was reasonable in light of the record then before it for consideration. Cf. Trial Tr. vol. 1, 79-83, 106-07. The NHSC found that the trial judge's comment on Najwa's testimony "was not inaccurate." Moussa, 164 N.H. at 124. The NHSC further stated that it "fail[ed] to see how the[] [trial court's] comments prejudiced the defendant, and, therefore, we are not persuaded that [they] give rise to plain error affecting the defendant's substantial rights." Id. (internal quotation marks and citation omitted). For these reasons, Moussa has not demonstrated cause and prejudice as to Claim 5.

D.    Claim 6: Admission of Hearsay

In Claim 6, Moussa asserts that his Sixth and Fourteenth Amendment rights were violated when the trial court allowed the State to introduce inadmissible hearsay evidence at trial -- first from Sgt. Lamb, and second, from the State Lab criminalist.  Because the hearsay issues were not preserved for appellate review, Moussa's appellate counsel challenged the admission of the hearsay evidence as plain error under federal and state constitutional law.  Def's Br., 17, 23 (doc. no. 25-1, Ex. A).  See State v. Towle, 167 N.H. 315, 326 (2015) (In New Hampshire, "[t]he general rule is that a contemporaneous and specific objection is required to preserve an issue for appellate review.").

The NHSC found that neither the admission of Sgt. Lamb's testimony, nor the testimonial references to the fingerprint cards, affected the outcome of Moussa's trial.  Accordingly, the court found that the admission of the challenged hearsay evidence did not constitute plain error.  See Moussa, 164 N.H. at 119, 122.  Because Moussa did not preserve the hearsay issues by contemporaneous objections, and the NHSC subjected the claim only to plain error review, the hearsay claims were procedurally defaulted.  Cf. Obershaw, 453 F.3d at 68.

Although Moussa reasserted this claim in his state habeas petition, the MCSC declined to address the claim. See Moussa, No. 217-2013-CV-0002, Order, 1, Mar. 19, 2013 (Doc. No. 25-1, Ex. B). Moussa has not asserted cause and prejudice to excuse this procedural default, and summary judgment is granted as to Claim 6.

### E.   Claim 8: Felony Sentences

Moussa asserts in Claim 8 that his rights under the Fifth, Eighth, and Fourteenth Amendments were violated when he was sentenced to felonies pursuant to the provisions of RSA § 173-B:19, IV, which authorizes felony sentences for convictions of stalking that are otherwise misdemeanors under RSA § 633:3-a, VI. As no contemporaneous objection was made at sentencing on these ground, Moussa, through counsel, alleged on appeal that the imposition of felony sentences under the circumstances presented by his case constituted plain error under state law. See Moussa, 164 N.H. at 126-27.[3]

---

[3]On October 16, 2011, while his direct appeal was pending, Moussa filed a petition for a writ of certiorari in the NHSC, challenging the imposition of felony sentences in his case, and invoking the Fifth, Sixth, and Fourteenth Amendments. See Pet. Writ Cert., Oct. 16, 2011 (doc. no. 30, Ex. N). The record before this court does not reveal whether the NHSC accepted Moussa's petition, but, in any event, Moussa did not obtain the relief he sought, as the felony sentences have never been vacated. Nothing in the record suggests that Moussa's federal claims were presented to the state courts prior to the filing of

37

The failure to raise the federal issues through a contemporaneous objection in the sentencing proceeding, and the failure of appellate counsel to brief Moussa's federal constitutional challenge to his sentence waived his claim on appeal under state law.  See Town of Londonderry, 2015 WL 7816131 at *2.  Accordingly, Claim 8 was procedurally defaulted in the state courts.

Appellate counsel's omission of the federal claim from the brief, as discussed above, does not establish "cause" and "prejudice" to excuse that procedural default.  Moussa has not demonstrated that any other factor "external to the defense," impeded his or her effort to comply with state procedural rules. See Costa, 673 F.3d at 26.  Moussa has thus failed to demonstrate cause and prejudice for his procedural default of Claim 8.

F.    Claim 11: Sentence Modification

In Claim 11, Moussa asserts that his Fifth, Eighth, and Fourteenth Amendment rights were violated when the NHSC denied him the opportunity to obtain a suspension of his sentence outside of the confines of RSA § 651:20, in contravention of the

---

the October 16, 2011, petition.  Accordingly, the record before this court does not demonstrate that Moussa's October 16, 2011, NHSC petition reinvigorated the claim the court now finds was procedurally defaulted at the time of sentencing.

38

sentencing court's intent at the time of sentencing. In its decision reversing the sentencing court's modification of Moussa's sentence, the NHSC relied exclusively on state rules of statutory interpretation. See generally In re N.H., No. 2014-0099 (N.H. July 11, 2014). The court also found that "[t]o the extent the defendant argues in his supplemental brief that sentence suspensions are required by either the State or Federal Constitutions, he has not sufficiently developed the argument to warrant appellate review." Id. at 5 (citing State v. Blackmer, 149 N.H. 47, 49 (2003) (appellate review confined to issues that are fully briefed; "passing reference to constitutional claim renders argument waived" (citation omitted))). Because the state court invoked a "firmly established and consistently followed" state procedural rule to deny Moussa's federal constitutional claims, federal habeas review of Moussa's sentence modification claim is deemed procedurally defaulted.

To the extent Moussa asserts that the procedural default of this claim should be excused because it was caused by his self-representation and his lack of legal knowledge, the court notes that "pro se status is insufficient to demonstrate cause and does not excuse procedural default." Leachman v. Stephens, 581 F. App'x 390, 396 (5th Cir. 2014), cert. denied, 135 S. Ct. 2315 (2015). Further, Moussa cannot assert that his appellate

39

counsel was ineffective where he was permitted to file a pro se supplemental brief so that he could raise the federal constitutional claims his attorney declined to brief.  Moussa has failed to demonstrate that any factor "external to the defense" caused the default of this claim.  See Costa, 673 F.3d at 26 (internal quotation marks and citation omitted).  Accordingly, Moussa has failed to demonstrate cause and prejudice for the default of Claim 11.

G.    Actual Innocence

"In certain exceptional cases involving a compelling claim of actual innocence, however, the state procedural default rule is not a bar to a federal habeas corpus petition." House v. Bell, 547 U.S. 518, 522 (2006).  To overcome a procedural default with a credible claim of actual innocence, petitioner must present "'new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial,'" and that "in light of new evidence 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"  Id. at 537 (quoting Schlup v. Delo, 513 U.S. 298, 324, 327 (1995)).

Moussa maintains in this action that he did not send the May 2, June 9, or June 30 letters, and is therefore innocent.

40

He has not, however, submitted any new evidence in support of that claim, and has only offered speculative theories about who else might have sent the letters.  Such general assertions and speculation do not provide a basis upon which an actual innocence claim may be found, as they do not constitute "new reliable evidence . . . that was not presented at trial." Schlup, 513 U.S. at 324.  Moussa has thus failed to demonstrate actual innocence as an excuse for any of his procedural defaults.  Accordingly, the court grants summary judgment on each of the procedurally defaulted claims discussed above, Claims 4-6, 8, and 11.

## III. Claims Asserting State Law Error: Claims 9 and 12

Moussa alleges that his Fourteenth Amendment due process rights were violated when the RCSC denied his motion for a new trial, and the MCSC denied his state court habeas petition, without evidentiary hearings (Claims 9 and 12).  Moussa has pointed to no established Supreme Court precedent that provides him with a federal due process right to an evidentiary hearing in the state court under the circumstances of this case. Further, Moussa has not asserted what evidence or argument he would have presented at a hearing in either the motion for a new trial or the state habeas action, or how the inability to do so prejudiced the results of those proceedings.

Moussa's entitlement to a hearing in state court is a matter of state law, and his federal due process rights are not triggered in the absence of a showing that the denial of a hearing deprived Moussa of the ability to submit argument or evidence he otherwise had a right to submit. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). State law errors are not grounds for habeas relief under 28 U.S.C. § 2254. Id. Because Claims 9 and 12 are not cognizable on federal habeas review, summary judgment is granted as to those claims.

IV. Certificate of Appealability

The Rules Governing Section 2254 Proceedings ("§ 2254 Rules") require the court to "issue or deny a certificate of appealability when it enters a final order adverse to the party." § 2254 Rule 11(a). The court will issue the certificate "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Moussa has failed to make such a showing. Accordingly, the court declines to issue a certificate of appealability in this case.

**Conclusion**

For the foregoing reasons, Respondent's two-part motion for summary judgment (doc. nos. 34-35) is GRANTED, and Moussa's

habeas petition (doc. nos. 1, 24, and 25) is DENIED.  The court

declines to issue a certificate of appealability.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

March 14, 2016

cc:  Saad Moussa, pro se
     Elizabeth C. Woodcock, Esq.

43